# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LARRY KLAYMAN**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. **11-874 (RBW)** |
| v. | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| **MARK ZUCKERBERG** and **FACEBOOK, INC.**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants move to dismiss this action on the grounds that the plaintiff has failed to state a claim on which relief can be granted.  In support, the Court is respectfully referred to the memorandum of points and authorities filed concurrently with this motion.


Dated:  July 28, 2011                    Respectfully submitted,


By:   /s/ *Craig S. Primis, P.C.*
Craig S. Primis, P.C. (D.C. Bar No. 454796)
K. Winn Allen (D.C. Bar No. 1000530)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
craig.primis@kirkland.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **LARRY KLAYMAN**, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. **11-874 (RBW)** |
| ) | |
| v. ) | **ORAL ARGUMENT REQUESTED** |
| ) | |
| **MARK ZUCKERBERG** and **FACEBOOK, INC.**, ) | |
| ) | |
| Defendants. ) | |
| ) | |

<u>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS**</u>

Dated:  July 28, 2011

Craig S. Primis, P.C. (D.C. Bar No. 454796)
K. Winn Allen (D.C. Bar No. 1000530)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
craig.primis@kirkland.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

LEGAL STANDARDS ON A MOTION TO DISMISS...................................................5

ARGUMENT .........................................................................................................................5

I.    THE COMMUNICATIONS DECENCY ACT REQUIRES DISMISSAL OF
PLAINTIFF'S CLAIMS ................................................................................................5

    A.    Section 230 Of The CDA Immunizes Providers Of Interactive Computer
Services From Civil Liability For Content Created By Third-Party Users
Of The Service .....................................................................................................5

    B.    Section 230 Of The CDA Requires Dismissal Of Plaintiff's Claims
Against Facebook..................................................................................................8

II.    EVEN ABSENT CDA IMMUNITY, PLAINTIFF'S TORT CLAIMS WOULD
FAIL ON THEIR OWN TERMS ...............................................................................11

    A.    Plaintiff's Assault Claim Fails Because Facebook Cannot Be Held Liable
As A Joint Tortfeasor And Threats Of Future Harm Do Not Constitute
Civil Assault As A Matter Of Law ...................................................................12

    B.    Plaintiff's Negligence Claim Fails Because Plaintiff Has Not Suffered
Any Actual Injury And Facebook Owed No Duty To Protect Plaintiff
From Offensive Statements Of Other Facebook Users........................................15

    C.    Plaintiff's Claim for Intentional Infliction of Emotional Distress Also Fails
Because Plaintiff Cannot Be Held Liable As A Joint Tortfeasor And The
Relevant Statements Were Not Specifically Directed At Plaintiff .......................18

CONCLUSION.....................................................................................................................19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ............................................................................. 5, 16, 19

*Baltimore v. District of Columbia*,
  10 A.3d 1141 (D.C. 2011) ................................................................................ 18, 19

*Beijing Tong Ren Tang, (USA) Corp. v. TRT USA Corp.*,
  2010 WL 98957 (N.D. Cal. Jan. 5, 2010) .......................................................... 13

*\*Blumenthal v. Drudge*,
  992 F. Supp. 44 (D.D.C. 1998) .................................................................... 6, 11

*Carafano v. Metrosplash.com. Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ........................................................................ 9

*Chase v. District of Columbia*,
  723 F. Supp. 2d 130 (D.D.C. 2010) ............................................................... 11

*Chavers v. Gatke Corp.*,
  132 Cal. Rptr. 2d 198 (Cal. Ct. App. 2003) ................................................... 13

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ...................................................................... 7, 8

*Finkel v. Facebook, Inc.*,
  2009 WL 3240365 (N.Y. Sup. Ct. Sep. 15, 2009) ........................................ 9

*Green v. America Online*,
  318 F.3d 465 (3d Cir. 2003) ...................................................................... 7, 10

*Hinton v. Corrections Corp. of Am.*,
  624 F. Supp. 2d 45 (D.D.C. 2009) ............................................................... 11

*Hughes v. Pair*,
  209 P.3d 963 (Cal. 2009) ......................................................................... 18, 19

*Johnson v. Arden*,
  614 F.3d 785 (8th Cir. 2010) ........................................................................ 6

*Kaiser v. U.S.*,
  761 F. Supp. 150 (D.D.C. 1991) ................................................................... 14

*Ladd v. Chemonics Int'l, Inc.*,
  603 F. Supp. 2d 99 (D.D.C. 2009) ................................................................. 12

i

*Ladd v. County of San Mateo*,
    911 P.2d 496 (Cal. 1996) ........................................................................... 15

*McMahon v. Craig*,
    97 Cal. Rptr. 3d 555 (Cal. Ct. App. 2009) ............................................... 19

*Miles v. Raycom Media, Inc.*,
    2010 WL 3419438 (S.D. Miss. Aug. 26, 2010)........................................... 7

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ................................................................. 6, 8

*\*Parisi v. Sinclair*,
    ___ F. Supp. 2d ___, 2011 WL 1206193 (D.D.C. March 31, 2011) ................. 5, 6, 8

*\*Ramey v. Darkside Prods., Inc.*,
    2004 WL 5550485 (D.D.C. May 17, 2004)................................................ 6, 8, 10

*Randolph v. ING Life Ins. & Annuity Co.*,
    973 A.2d 702 (D.C. 2009) ......................................................................... 16

*Rosenberg v. Harwood*,
    No. 100916536 (Utah Third Jud. Dist. Ct. May 27, 2011)......................... 17

*Ruiz v. Gap, Inc.*,
    622 F. Supp. 2d 908 (N.D. Cal. 2009) ...................................................... 16

*Saunders v. Nemati*,
    580 A.2d 660 (D.C. 1990) ......................................................................... 13

*Shiamili v. Real Estate Grp. of N.Y., Inc.*,
    2011 WL 2313818 (N.Y. June 14, 2011) ..................................................... 7

*Shin v. Kong*,
    95 Cal. Rptr. 2d 304 (Cal. Ct. App. 2000)................................................ 19

*Simmons v. Danhauer & Assocs., LLC*,
    2010 WL 4238856 (D.S.C. Oct. 21, 2010) .................................................. 7

*Tetreau v. Facebook, Inc.*,
    No. 10-4558-CZ (Mich. Super. Ct. Feb. 23, 2011)..................................... 9

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007).................................................................. 7, 8

*Webb v. Olive Garden Rest./Darden Rests.*,
    2009 WL 734667 (N.D. Cal. Mar. 19, 2009)........................................ 12, 14

*Young v. Facebook, Inc.*,
  2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ........................................................................... 17

*\*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ..................................................................................... 6, 7, 9, 10

**Statutes**

*\*47 U.S.C. § 230* .................................................................................................................... passim

**Treatises**

*Prosser & Keeton on Torts § 30* .............................................................................................. 14

*Prosser & Keeton on Torts § 46* .............................................................................................. 12

*Restatement (Second) of Torts § 21* ....................................................................................... 11

*Restatement (Second) of Torts § 31* ....................................................................................... 13

*Restatement (Second) of Torts § 876* ..................................................................................... 12

\* — denotes authorities chiefly relied upon

## INTRODUCTION

The courts of Washington, D.C. are no place for a publicity stunt.  The initial complaint in this case, however, was little more.   Now, despite having had two months to review Facebook's motion to dismiss the initial complaint, plaintiff has tendered an amended complaint that is no less a waste of this Court's time and resources.  This Court should dismiss plaintiff's amended complaint for failure to state a claim so that defendants can go about their business and this Court can return to those matters that properly merit its attention.

Proceeding pro se, the plaintiff Larry Klayman alleges that defendants Facebook, Inc. and Mark Zuckerberg (collectively, "Facebook") are liable to him for "compensatory and punitive damages in an amount in excess of *$1,000,000,000.00 (One Billion Dollars)*."  Am. Compl. at 8 (emphasis added).  The purported basis for this outrageous monetary demand stems from Mr. Klayman's use of the free online social-networking services provided by Facebook.  Mr. Klayman alleges that, while using his Facebook account, he encountered a Facebook page created by a third-party Facebook user that "openly advocate[d] an intifada against and thus death to persons of Jewish origin." *Id*. ¶ 8.  Although he concedes that Facebook ultimately removed this page, he nonetheless makes the absurd argument that Facebook is a "joint tortfeasor[]" acting "in concert in the on-going threats and assaults on Plaintiff and other Jews" because it permitted this third-party speech and failed to remove it "for many days." *Id*. ¶ 12.

The grounds for dismissing Mr. Klayman's frivolous claims are straightforward and well-established.  As courts in this District and across the country have repeatedly held, § 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, insulates interactive-computer-service providers such as Facebook from liability for speech by third-party users of the

service.  Indeed, lawsuits such as this—which seek to hold Facebook liable for failing to screen and remove content posted by its users—are precisely what the CDA was enacted to foreclose.

Even looking past the CDA's broad grant of immunity, Mr. Klayman's tort claims fail on their own terms.   Because Facebook did not write, sponsor, or otherwise encourage the threatening statements at issue, it cannot, as a matter of law, be considered a joint tortfeasor acting in concert with those unnamed third parties that issued the threats.  In addition, it is an old principle of the common law that mere verbal threats to cause harm in the future do not constitute civil assault—both because mere words cannot amount to assault and because threats of future harm lack the required imminence.  Mr. Klayman's negligence claim also clearly fails because he has not suffered any actual injury and, in any event, Facebook had no duty to shield him from the offensive speech of other Facebook users.  Finally, Facebook is not liable for intentional infliction of emotional distress because it did not act in concert with the third-party speakers that issued the threats, because the threats at issue were not specifically directed at Mr. Klayman, and because his allegations of injury fall well short of satisfying federal-pleading requirements.

For these reasons, the Defendants respectfully request that the amended complaint be dismissed for failure to state a claim.  In the alternative, Defendants have also filed a motion to transfer this case to the United States District Court for the Northern District of California, but these claims are so deficient it is well within this Court's discretion to simply address them on the merits and resolve this case now, as a matter of law.

## BACKGROUND

This case arises out of plaintiff's use of the online social-networking services provided by Facebook through its website www.facebook.com.  Facebook allows users to share content with

others, including articles, photographs, news about family members and friends, and opinions about world events.  Users can also view content shared by other Facebook users on one or more of the hundreds of millions of Facebook pages.  *See generally* Am. Compl. ¶ 4 & p. 8.  To access Facebook, a user must open an account and agree to abide by the terms of service, including a Statement of Rights and Responsibilities.  Facebook is, and always has been, a free service.  Mr. Zuckerberg, a named codefendant in this case, is the founder and Chief Executive Officer of Facebook.  *Id.* ¶¶ 4, 7.

Plaintiff is a "well known lawyer, advocate, writer, television and radio commentator, and public figure" who lives in Washington, D.C. and at "all material times" possessed and used "a Facebook account, titled Larry Klayman."[1]  *Id.* ¶¶ 6, 11.  Plaintiff alleges that, while using his Facebook account, he "encountered the Facebook page titled 'Third Palestinian Intifada.'"  *Id.* ¶ 7.  Created by an unnamed, third-party Facebook user, that page allegedly included comments from unnamed individuals who "advocate[d] an intifada against and thus death to persons of Jewish origin," *id.* ¶ 8, "announc[ed] and threaten[ed] that 'Judgment Day will be brought upon us only once Muslims have killed all the Jews,'" *id.* ¶ 7, and "featured 'wild incitement' with call to kill Jews and talk of liberating Jerusalem through violence," *id.*  Plaintiff does not allege that any of the postings on the Third Palestinian Intifada page ("Third Intifada Page") specifically identified or targeted him or even Washington, D.C.  Nonetheless, plaintiff alleges that he suffered unspecified harm from reading the Third Intifada Page, particularly because he is "an

---

[1] Plaintiff filed his initial complaint in this case on March 31, 2011.  After removing the case to this Court, Facebook filed a motion to dismiss the complaint on May 17, 2011.  Facebook did not request or receive any extensions of time.  On May 31, June 16, and June 30, plaintiff requested extensions of time to respond to Facebook's motion to dismiss.  Facebook consented to all three extensions, even though each extension request was made on the very day plaintiff's deadlines elapsed.  On July 13, 2011, plaintiff filed an amended complaint without seeking Court approval or Facebook's consent, as required by Fed. R. Civ. P. 15.  Nevertheless, on July 20, 2011, Facebook stipulated to plaintiff's filing of an amended complaint.  This Court approved the parties' stipulation the next day.  Plaintiff has had more than adequate time (over two months) to prepare an opposition to Facebook's motion to dismiss.  Accordingly, Facebook does not believe there is good cause to grant any further extensions to plaintiff.

American citizen of Jewish origin" who is "widely known in the Muslim/Arabic world for his support of Israel." *Id.* ¶¶ 2, 11.

The amended complaint seeks to hold Facebook liable in tort for the threats on the Third Intifada Page and "related and similar pages on Facebook." *Id.* ¶ 8.  Significantly, plaintiff ***does not*** allege that Facebook had any role in the creation of the Third Intifada Page or its content. Instead, the amended complaint seeks to impose liability for Facebook's alleged delay in removing the page when asked to do so by a representative of the Israeli Government. *See id.* ¶ 7 ("Defendants refused" to "take down the page"); *id.* ¶¶ 12, 19.  The amended complaint does not allege that plaintiff himself asked that the page be removed, and it concedes that Facebook did in fact ultimately remove the Third Intifada Page.  But plaintiff maintains that Facebook nonetheless remains liable because it "refused for many days" to remove the page and did so only after "significant damage had already been done" to unspecified individuals. *Id.* ¶ 12.

The amended complaint includes three specific counts.  Count I is a claim for civil assault in which plaintiff alleges that reading the Third Intifada Page caused him to suffer a "reasonable apprehension of severe bodily harm and/or death." *Id.* ¶ 16.  Count II is a common-law negligence claim wherein plaintiff alleges that defendants "owed Plaintiff a duty of care, which they violated and breached by allowing and furthering the death threats by the Third Palestinian Intifada." *Id.* ¶ 19.  Count III is a claim for intentional infliction of emotional distress, in which plaintiff alleges that Facebook acted "in concert with radical Palestinians and muslims" to cause him "severe emotional distress." *Id.* ¶ 23.  Plaintiff "prays for compensatory and punitive damages in an amount in excess of $1,000,000,000.00 (One Billion Dollars), plus an award of attorneys fees and costs." *Id.* at 8.  He also "demands the [sic] judgment for preliminary and permanent injunctive relief against each of the Defendants." *Id.*

## LEGAL STANDARDS ON A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quotation marks omitted).  Although well-pleaded factual allegations are assumed to be true, "the Court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint." *Parisi v. Sinclair*, ___ F. Supp. 2d ___, 2011 WL 1206193, at *3 (D.D.C. March 31, 2011) (quotation marks omitted). "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* (quotation marks omitted).

## ARGUMENT

## I.     THE COMMUNICATIONS DECENCY ACT REQUIRES DISMISSAL OF PLAINTIFF'S CLAIMS

This case is the quintessential example of a suit barred as a matter of law by § 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230.  As courts in this District and elsewhere have repeatedly held, the CDA bars any cause of action that seeks to hold an interactive-computer-service provider liable for content created by a third-party user of the service or for the service provider's decision to allow, edit, or remove that content.  Because plaintiff's claims seek to impose the exact type of liability the CDA forbids, this Court should dismiss the amended complaint in its entirety.

### A.     Section 230 Of The CDA Immunizes Providers Of Interactive Computer Services From Civil Liability For Content Created By Third-Party Users Of The Service

The broad immunity afforded by the CDA stems from the plain language of the statute. Section 230 of the CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information

content provider," 47 U.S.C. § 230(c)(1), and that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [§ 230]," *id*. § 230(e)(3).

The effect of § 230 is to "immunize providers of interactive computer services from civil liability in tort with respect to material disseminated by them but created by others." *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998); *see also, e.g.*, *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("§ 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."). In particular, by mandating that providers of interactive computer services are not to be treated as "publishers," the statute bars lawsuits "'seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'" *Drudge*, 992 F. Supp. at 50 (quoting *Zeran*, 129 F.3d at 330); *see also Ramey v. Darkside Prods., Inc.*, 2004 WL 5550485, at *6 (D.D.C. May 17, 2004) (collecting cases supporting this proposition).

This Court routinely applies these rules to reject claims seeking to impose liability on service providers for third-party content or for exercising traditional editorial functions. *See Parisi*, 2011 WL 1206123, at *5-6 (§ 230 bars tort claims against online booksellers relating to allegedly defamatory promotional statements posted by third parties); *Ramey*, 2004 WL 5550485, at *7 (online advertising guide entitled to CDA immunity for tort suit stemming from content posted by third-party user); *Drudge*, 992 F. Supp. at 50 (§ 230 bars defamation claims against AOL relating to content provided by third-party gossip columnist). Other courts throughout the nation also regularly uphold CDA immunity in cases pursuing such theories.[2]

---

[2] *See, e.g.*, *Johnson v. Arden*, 614 F.3d 785, 792 (8th Cir. 2010) (internet servicer provider entitled to CDA immunity in defamation suit for comments posted to message board by third-party users); *Nemet Chevrolet, Ltd. v.*

Courts have recognized that the CDA's broad grant of immunity serves two important policy goals. *First*, because imposing tort liability on service providers for disseminating offensive material created by third parties would have an unacceptable chilling effect on freedom of speech on the Internet, § 230 helps "maintain the robust nature of Internet communication." *Drudge*, 992 F. Supp. at 50 (quotation marks omitted). *Second*, § 230 removes disincentives to self-regulation by assuring service providers that they can safely self-police the Internet for offensive material without fear that their editorial choices might subject them to liability. *See id.* at 52 ("Congress has conferred immunity from tort liability as an incentive to … self-police the Internet for obscenity and other offensive material."); *see also Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-419 (1st Cir. 2007) (noting the "obvious chilling effect" tort liability could have on Internet communications and "the congressional purpose of removing the disincentives to self-regulation that would otherwise result" if § 230 did not exist).[3]

---

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (consumer-review website entitled to CDA immunity for tort claims relating to comments posted by third-party users); *Doe v. MySpace, Inc.*, 528 F.3d 413, 415 (5th Cir. 2008) (§ 230 barred negligence suit seeking to hold MySpace liable for failing to prevent 13-year-old from lying about her age to create profile and thus from being sexually assaulted); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-419 (1st Cir. 2007) (operator of internet message board entitled to CDA immunity for suit relating to defamatory postings made by third-party users); *Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003) (AOL entitled to § 230 immunity in suit alleging liability for messages transmitted through its internet service); *Simmons v. Danhauer & Assocs., LLC*, 2010 WL 4238856, at *5 (D.S.C. Oct. 21, 2010) (§ 230 bars claims against online auction site for information and actions of third-party user of the site); *Miles v. Raycom Media, Inc.*, 2010 WL 3419438, at *3 (S.D. Miss. Aug. 26, 2010) (television station immune from liability under CDA for failing to screen and remove allegedly defamatory comments posted on its website); *Shiamili v. Real Estate Grp. of N.Y., Inc.*, 2011 WL 2313818 (N.Y. June 14, 2011) (§ 230 bars defamation and disparagement claims against operator of real-estate blog for comments posted by third-party users of the blog).

[3] *Zeran* persuasively explains the free-speech dangers that would result from allowing suits like this one to go forward:

> Interactive computer services have millions of users. The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

*Zeran*, 129 F.3d at 331 (citations and quotation marks omitted).

7

In light of the important interests at stake, "[c]ourts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Lycos*, 478 F.3d at 418 ("[C]ourts that have addressed these issues have generally interpreted Section 230 immunity broadly."); *Ramey*, 2004 WL 5550485, at *7 ("[C]ourts treat §230(c) immunity as quite robust.").

**B.     Section 230 Of The CDA Requires Dismissal Of Plaintiff's Claims Against Facebook**

Applying these well-established principles to the facts of this case, it is beyond doubt that § 230 requires this Court to dismiss plaintiff's amended complaint. *See Parisi*, 2011 WL 1206193, at *4 ("The Court may consider CDA immunity on a 12(b)(6) motion if those facts are apparent from the face of the complaint."); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("[Courts] aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from ultimate liability, but also from having to fight costly and protracted legal battles.") (quotation marks omitted).

The statutory language and case law recognize that § 230 immunity applies when (1) the defendant is a "provider … of an interactive computer service;" (2) the plaintiff is attempting to hold the defendant liable as a "publisher or speaker" of allegedly harmful content; and (3) the allegedly harmful content was "provided by another information content provider," and not by the defendant.  47 U.S.C. § 230(c)(1); *see also Parisi*, 2011 WL 1206193, at *4; *Lycos*, 478 F.3d at 418.  Those elements are easily satisfied here.

### 1.      Facebook Is A Provider Of An Interactive Computer Service

It cannot seriously be doubted that Facebook is a "provider" of an "interactive computer service."  47 U.S.C. § 230(c)(1).  The CDA broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  *Id*. § 230(f)(2).  The services provided by Facebook clearly meet that description because Facebook, through its website and platform, allows users from around the world to access Facebook's servers for the purposes of posting data and sharing that data with others.  *See, e.g.*, Am. Compl. ¶ 4 (Facebook "engages in social networking via the internet").

Indeed, two courts have previously ruled that Facebook is a provider of an interactive computer service.  *See Tetreau v. Facebook, Inc.*, No. 10-4558-CZ (Mich. Cir. Ct. Feb. 23, 2011) (dismissing defamation and tort claims because "Facebook is a provider of an interactive computer service and entitled to immunity under the [CDA]") (attached at Ex. 1, Allen Decl., Ex. B); *Finkel v. Facebook, Inc.*, 2009 WL 3240365 (N.Y. Sup. Ct. Sep. 15, 2009) (dismissing defamation claim because "Facebook is immune from liability under the [CDA] as an interactive computer service").  And, looking more broadly, courts agree that website operators like Facebook that allow users to post and share data are clearly "providers" of an "interactive computer service."  *See, e.g.*, *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1123-1124 (9th Cir. 2003) (Matchmaker.com provides interactive computer services because it allows users to post information on a profile page and share that information with others); *Zeran*, 129 F.3d at 329 & 330 n. 2 (AOL provides interactive computer services because it allows users to "transmit information privately via electronic mail" and "communicate publicly by posting messages on AOL bulletin boards").

**2.      Plaintiff Is Attempting To Hold Facebook Liable As The Publisher Or Speaker Of The Allegedly Harmful Content**

Plaintiff is clearly attempting to hold Facebook liable as the "publisher or speaker" of the content found on the Third Intifada Page and "related and similar pages on Facebook." Am. Compl. ¶ 8. By the terms of the amended complaint, plaintiff's tort claims are premised on Facebook's alleged decision not to remove the Third Intifada Page immediately upon being asked to do so. *See id.* ¶ 7 ("Defendants refused" to "take down the page"); *id.* ¶ 12 ("When Mark Zuckerberg and Facebook were initially asked to remove the Intifada FB Page and related pages, they refused for many days."); *id.* ¶ 19 (Defendants "allow[ed] and further[ed] the death threats by the Third Palestinian Intifada" by their "refusal … to remove these postings when they were asked to do so"). Whether and when to remove or exclude content posted by a third-party user falls at the very core of a publisher's traditional editorial function, and thus plaintiff's claims clearly seek to treat Facebook as the publisher of the Third Intifada Page. *See, e.g.*, *Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003) (listing "decisions relating to the monitoring, screening, and deletion of content" as "actions quintessentially related to a publisher's role"); *Zeran*, 129 F.3d at 330 (listing the decision to "withdraw" content as one of "a publisher's traditional editorial functions").

**3.      The Allegedly Harmful Content Was Provided By A Third-Party Facebook User, And Not By Facebook Itself**

Finally, there can be no dispute in this case that the offensive statements forming the basis for plaintiff's claims were all "provided by ***another*** information content provider," and not by Facebook itself. 47 U.S.C. § 230(c)(1) (emphasis added). The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development" of the statements at issue, *id.* § 230(f)(3), and courts give that definition a narrow construction, *see Ramey*, 2004 WL 5550485, at *7 (courts adopt a "relatively restrictive

10

definition of 'information content provider'").  Here, the amended complaint is entirely devoid of any allegation that Facebook was somehow "responsible," even "in part," for the "creation or development" of the offensive statements on the Third Intifada Page or any other similar Facebook page.  To the contrary, plaintiff's allegations are grounded in Facebook's alleged failure to **remove** statements posted by **others** on the Third Intifada Page.  *See, e.g.*, Am. Compl. ¶¶ 7, 12, 19.  Plaintiff's allegations thus plainly are attempting to hold Facebook liable for information created and developed by unnamed third-party users.

In the end, plaintiff cannot escape that "[Facebook] was nothing more than a provider of an interactive computer service on which the [Third Intifada Page] was carried, and Congress has said quite clearly that such a provider shall not be treated as a 'publisher or speaker' and therefore may not be held liable in tort."  *Drudge*, 992 F. Supp. at 50 (quoting 47 U.S.C. § 230(c)(1)).  Accordingly, the amended complaint should be dismissed.

## II.   EVEN ABSENT CDA IMMUNITY, PLAINTIFF'S TORT CLAIMS WOULD FAIL ON THEIR OWN TERMS

Section 230 of the CDA clearly mandates that plaintiff's claims be dismissed.  But even looking past that fatal obstacle, plaintiff's state-law tort claims would fail on their own terms.

As an initial matter, were this Court to somehow reach the merits of plaintiff's claims, California law would apply.  In choosing to use and access Facebook, plaintiff—like all Facebook users—agreed to a Statement of Rights and Responsibilities ("Statement of Rights") that establishes the terms governing Facebook's relationship with its users.  *See* Ex. 1, Allen Decl., Ex. A.[4]  The Statement of Rights provides that the "laws of the State of California will

---

[4] This Court can properly rely on the Statement of Rights in ruling on this motion to dismiss.  In adjudicating a Rule 12(b)(6) motion, a court can consider documents not attached to the complaint if those documents are integral to the plaintiff's claims or if the complaint incorporates or necessarily relies upon those documents.  *See, e.g.*, *Chase v. District of Columbia*, 723 F. Supp. 2d 130, 133 (D.D.C. 2010); *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46-47 (D.D.C. 2009).  That is the case here.  Plaintiff's claims are inescapably premised on him having secured and used a Facebook account, and thus they cannot be divorced from the very document—the Statement of Rights—

govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions." *Id.*, Ex. A § 15.1. That clause is clearly enforceable. *See, e.g.*, *Ladd v. Chemonics Int'l, Inc.*, 603 F. Supp. 2d 99, 115 n.11 (D.D.C. 2009) (choice-of-law provision enforceable "as long as there is some reasonable relationship with the state specified," such as the defendant having its headquarters in the selected state) (quotation marks omitted). In the end, however, the choice-of-law question is largely academic, as plaintiff's claims would fare no better under District of Columbia law.

### A.   Plaintiff's Assault Claim Fails Because Facebook Cannot Be Held Liable As A Joint Tortfeasor And Threats Of Future Harm Do Not Constitute Civil Assault As A Matter Of Law

In Count I, plaintiff alleges that Facebook is liable to him for assault. Civil assault is defined as the "demonstration of an unlawful intent by one person to inflict immediate injury on the person of another then present." *Webb v. Olive Garden Rest./Darden Rests.*, 2009 WL 734667, at *3 (N.D. Cal. Mar. 19, 2009); *see also Restatement (Second) of Torts* § 21 (defendant liable for assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other … or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension"). Plaintiff maintains that he was assaulted here because the statements on the Third Intifada Page "amount[ed] to a threat of the use of force against non-Muslims such as Plaintiff, and particularly Jews," Am. Compl. ¶ 15, and reading those statements "caused Plaintiff reasonable apprehension of severe bodily harm and/or death," *id.* ¶ 16. Liability extends to Facebook, he claims, because Facebook was a "joint tortfeasor[] … acting in concert in the on-going threats." *Id.* ¶ 12.

---

to which plaintiff agreed in creating his Facebook account and which expressly governs the terms of his use. *See* Am. Compl. ¶ 6 ("Plaintiff, at all material times, has a Facebook account, titled Larry Klayman."); *id.* ¶ 7 ("Plaintiff has encountered the Facebook page titled 'Third Palestinian Intifada' … through the use of his … Facebook page."); *id.* ¶ 19 ("As a subscriber to Facebook … Defendants owed Plaintiff a duty of care, which they violated.").

For three reasons, plaintiff's assault claim obviously fails as a matter of law.  *First*, there is no basis in this case for holding Facebook liable as a "joint tortfeasor … acting in concert" with the threats made by unnamed, third-party speakers on the Third Intifada Page.  To be held liable for the tortious acts of another on a concerted-action theory, the defendant must have "direct[ly] participa[ted] in the acts which caused damage, or encouraged and assisted the person who directly caused the injuries by participating in a joint activity."  *Chavers v. Gatke Corp.*, 132 Cal. Rptr. 2d 198, 204 (Cal. Ct. App. 2003) (quotation marks omitted); *see also Restatement (Second) of Torts* § 876 (concerted-action liability attaches when the defendant "does a tortious act in concert with the other," acts "pursuant to a common design with him," or "gives substantial assistance or encouragement to the other"); Keeton et al., *Prosser & Keeton on Torts* § 46 (5th ed. 1984).  None of that is true with respect to Facebook here, as Facebook clearly did not write or sponsor the statements on the Third Intifada Page, nor did it pursue a common plan with or lend encouragement or assistance to the third-party speakers.  Facebook did nothing more than provide a service to enable users to connect and share information, and that is clearly insufficient to constitute the kind of concerted action that would justify treating Facebook as a joint tortfeasor.

*Second*, it has long been the rule that mere words, unaccompanied by any threatening overt action on the part of the speaker, cannot amount to an assault.  *See Beijing Tong Ren Tang, (USA) Corp. v. TRT USA Corp.*, 2010 WL 98957, at *2 (N.D. Cal. Jan. 5, 2010) ("[M]ere words, however threatening, will not amount to an assault.") (quotation marks omitted); *Saunders v. Nemati*, 580 A.2d 660, 664 (D.C. 1990) ("[W]ords do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of an imminent harmful or offensive contact with his person.") (quotation marks omitted); *see also*

*Restatement (Second) of Torts* § 31, cmt. a ("Ordinarily mere words, unaccompanied by some act apparently intended to carry the threat into execution, do not put the other in apprehension of an imminent bodily contact, and so cannot make the actor liable for an assault.").  That well-established rule clearly dooms plaintiff's assault claim because plaintiff does not allege that the statements on the Third Intifada Page or any other similar page were accompanied by any overt act on the part of the unnamed speakers demonstrating an intent to immediately carry the threat into execution as to anyone, much less plaintiff.  Indeed, given that the threats were posted, distributed, and viewed on the Internet, any concomitant overt act would likely have been impossible.

*Third*, a critical element of assault is that the allegedly wrongful conduct put the plaintiff in apprehension of ***imminent*** injury, as opposed to injury at some point in the future.  *See Webb*, 2009 WL 734667, at *3 (requiring intent to inflict "***immediate*** injury on the person of another ***then present***") (emphases added); *Kaiser v. United States*, 761 F. Supp. 150, 155 (D.D.C. 1991) (requiring "apprehension of ***immediate*** harmful conduct) (emphasis added); *Restatement (Second) of Torts* § 31 (requiring "apprehension of an ***imminent*** bodily contact") (emphasis added).  The required imminence is clearly missing from plaintiff's assault claim.  According to the amended complaint, the threatening statements found on the Third Intifada Page stated that "the attacks on Jews and others will commence on or about May 15, 2011."  Am. Compl. ¶ 12.  The statements on which plaintiff relies targeted a diffuse group of millions of people and threatened bodily harm commencing ***six weeks*** after plaintiff filed his initial complaint in this case, and thus at least ***six weeks*** after plaintiff viewed the threatening statements.  *See* Notice of Removal ¶ 1 [Dkt. #1] (plaintiff filed complaint on March 31, 2011).  Needless to say, a threat to cause bodily harm at a point in time six weeks in the future lacks the imminence necessary to

constitute the tort of assault.  Moreover, over two months have elapsed since the date on which

the alleged intifada was to have commenced, and yet plaintiff has still not identified any

imminent threat of bodily harm directed at him.

> **B.    Plaintiff's Negligence Claim Fails Because Plaintiff Has Not Suffered Any Actual Injury And Facebook Owed No Duty To Protect Plaintiff From Offensive Statements Of Other Facebook Users**

Count II alleges that Facebook is liable under a common law negligence theory.  The

elements of a negligence cause of action are well-known: (i) the existence of a legal duty to use

due care in a particular factual situation; (ii) a breach of that duty; (iii) proximate or legal

causation; and (iv) a compensable injury.  *See Ladd v. County of San Mateo*, 911 P.2d 496, 498

(Cal. 1996).  Here, the amended complaint alleges that Facebook "owed Plaintiff a duty of care"

because he is "a subscriber to Facebook and … a member of the public" and that Facebook

breached that duty of care by "allowing and furthering the death threats by the Third Palestinian

Intifada, and related and similar sites."  Am. Compl. ¶ 19.

The most obvious reason why plaintiff's negligence claim fails as a matter of law is that

he has not suffered any actual injury.  It is blackletter law that a plaintiff seeking to recover for

negligence must establish "[a]ctual loss or damage" resulting from the alleged wrongful conduct.

*Prosser & Keeton on Torts* § 30 (stating that "proof of damage [is] an essential part of the

plaintiff's case" and that a negligence claim fails where "no actual loss has occurred").  And

although plaintiff pays lip service to this critical requirement, his damages allegations are

woefully insufficient to comply with it.  Plaintiff's amended complaint offers nothing more than

conclusory allegations of injury that are entirely bereft of any factual specificity or development.

*See* Am. Compl. ¶ 16 ("[P]ersons such as Plaintiff have already been killed and severely injured

as a result of Defendants['] actions."); *id*. ¶ 17 ("Plaintiff was damaged thereby"); *id*. ¶ 20

("Plaintiff was thereby damaged.").  Such naked allegations of injury, which simply parrot the

elements of a negligence cause of action, fall well short of satisfying bedrock federal-pleading requirements. *Iqbal*, 129 S.Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (quotation marks omitted). Put simply, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are far from sufficient to state a plausible claim for relief, but that is all plaintiff has pleaded in his amended complaint. *Id.* at 1949 (quotation marks omitted).

Setting aside these pleading deficiencies, the allegations of the amended complaint reveal that plaintiff simply has not suffered the kind of concrete, actual injury required to maintain a cause of action for negligence. Plaintiff does not explain what ***present*** physical or economic harm he has suffered as a result of viewing the threats on the Third Intifada Page or other related pages. And the speculative (and highly unlikely) possibility that such harm might materialize in the ***future*** is not, as a matter of law, sufficient to satisfy the damages element of a negligence claim. *See Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913 (N.D. Cal. 2009) ("[B]reach of a duty causing only speculative harm or the threat of future harm does not normally suffice to create a cause of action for negligence."); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 708 (D.C. 2009) ("[S]peculative harm, or the threat of future harm—*not yet realized*—does not suffice to create a cause of action for negligence.") (quotation marks omitted).

Even if plaintiff could allege a compensable injury, his novel negligence claim would still fail because Facebook did not, as a matter of law, have a duty to protect him from the threatening or offensive comments of other third-party users. Certainly no such duty arose out of the contractual relationship between the parties, as Facebook ***expressly disclaimed*** any such duty in the Statement of Rights to which plaintiff agreed. *See* Ex. 1, Allen Decl., Ex. A § 3 ("We do our best to keep Facebook safe, but we cannot guarantee it."); *id.*, Ex. A § 15.3 ("WE DO NOT

GUARANTEE THAT FACEBOOK WILL BE SAFE OR SECURE."); *id.*, Ex. A § 15.3 ("FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES.") (emphasis in original).  Nor is there any basis for imposing such a duty as a matter of law: The same policy considerations that motivated Congress to enact the CDA—protecting robust speech on the internet and encouraging self-regulation—also militate against creating out of whole cloth any state-law duty requiring interactive-computer-service providers like Facebook to protect their users from offensive content.

The decision in *Young v. Facebook, Inc.*, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010) is directly on point.  In *Young*, a Facebook user sued Facebook alleging, *inter alia*, that Facebook was liable on a negligence theory for failing to detect and remove content from other third-party users subjecting the plaintiff to "hatred, violence, discrimination, threats … and personal attacks." *Id*. at *1 (quotation marks omitted).  The court granted Facebook's motion to dismiss the negligence claim, holding that the plaintiff had failed to identify an applicable duty. The court reasoned that Facebook's Statement of Rights "expressly disclaims any duty to provide for the safety of Facebook users," and that Facebook thus owed no duty to "condemn all acts or statements that inspire, imply, incite, or directly threaten violence against anyone." *Id*. at *5 (quotation marks omitted).  The Court also noted that imposing such a broad duty "would be inconsistent with the policy choices undertaken by Congress in the Communications Decency Act, which sharply limits the responsibility of interactive computer service providers for the content provided by third parties." *Id*.; *see also Rosenberg v. Harwood*, No. 100916536 (Utah Third Jud. Dist. Ct. May 27, 2011) (holding that Google does not owe users of its Google Maps service a duty to exercise reasonable care in providing directions) (attached as Ex. 1, Allen Decl., Ex. C).  The same result should obtain here, and this Court should reject the proposition that

Facebook owed plaintiff some expansive, ill-defined duty with respect to content posted by other Facebook users.

### C. Plaintiff's Claim for Intentional Infliction of Emotional Distress Also Fails Because Plaintiff Cannot Be Held Liable As A Joint Tortfeasor And The Relevant Statements Were Not Specifically Directed At Plaintiff

In Count III, plaintiff alleges that Facebook is liable to him for intentional infliction of emotional distress. To make out a claim for intentional infliction of emotional distress, plaintiff must establish (1) that Facebook engaged in "extreme and outrageous conduct" with the intent of causing emotional distress; (2) that he has in fact suffered "severe or extreme emotional distress"; and (3) actual and proximate causation. *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (quotation marks omitted); *see also Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011). Plaintiff alleges that Facebook, by not immediately removing the Third Intifada Page when asked to do so, acted "in concert with radical Palestinians and muslims" to engage in actions that were "calculated to cause severe emotional distress on Plaintiff." Am. Compl. ¶ 23.

Three independent reasons justify dismissing plaintiff's claim as a matter of law. As already explained, there is no basis in this action for holding that Facebook acted "in concert" with those third-party Facebook users who posted threatening statements on the Third Intifada Page and other similar pages. *See supra* at 13. Facebook neither wrote nor sponsored those statements, nor did it lend encouragement or assistance to the third-party speakers. *Id*. The absence of any such allegations requires dismissal of plaintiff's claim for intentional infliction of emotional distress, just as it requires dismissal of plaintiff's assault claim.

In addition, plaintiff's claim suffers from the fatal flaw that the statements of which he complains were not directed toward him specifically, but toward a diffuse group of millions of people. It is well-established that, to form the basis of a claim for intentional infliction of emotional distress, the conduct at issue "must be conduct directed at the plaintiff, or occur in the

presence of a plaintiff of whom the defendant is aware." *McMahon v. Craig*, 97 Cal. Rptr. 3d 555, 565 (Cal. Ct. App. 2009) (quotation marks omitted); *see also Shin v. Kong*, 95 Cal. Rptr. 2d 304, 315 (Cal. Ct. App. 2000) ("The wrongful conduct alleged in support of a cause of action for intentional infliction of emotional distress must be conduct that is directed at the plaintiff."). The threatening statements in this case, however, made no mention of plaintiff and did not contain any other indicia suggesting that they were targeting plaintiff specifically.

Finally, plaintiff has failed to allege adequately the most central component of a successful intentional-infliction-of-emotional-distress claim—namely, that he has suffered "severe or extreme" emotional distress. *Hughes*, 209 P.3d at 976 (quotation marks omitted); *Baltimore*, 10 A.3d at 1155. Applicable law requires plaintiff to allege and prove "emotional distress of such substantial quality or enduring quality that no reasonable [person] in a civilized society should be expected to endure it." *Hughes*, 209 P.3d at 976 (quotation marks omitted; alteration in original). Yet plaintiff's amended complaint fails to include any developed allegations explaining the nature, scope, quality, or severity of his alleged emotional distress. Instead, plaintiff is content to rest on conclusory allegations of injury that are clearly insufficient to state a plausible claim for relief. *See Iqbal*, 129 S.Ct. at 1949. Plaintiff's failure to meet even the most basic requirements of asserting a claim for intentional infliction of emotional distress requires that this claim—like his entire complaint—be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss plaintiff's amended complaint under Rule 12(b)(6).

Dated:  July 28, 2011                        Respectfully submitted,


                              By:    /s/ *Craig S. Primis, P.C.*
                                     Craig S. Primis, P.C. (D.C. Bar No. 454796)
                                     K. Winn Allen (D.C. Bar No. 1000530)
                                     KIRKLAND & ELLIS LLP
                                     655 Fifteenth Street, N.W.
                                     Washington, D.C.  20005
                                     Telephone: (202) 879-5000
                                     Facsimile: (202) 879-5200
                                     craig.primis@kirkland.com

                                     *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I, Craig S. Primis, P.C., certify that on this date, July 28, 2011, I caused a true and correct copy of Defendants' Motion to Dismiss, Defendants' Memorandum In Support of Motion to Dismiss, all attached exhibits, and a proposed order to be served on the following individual via the Court's Electronic Filing system:

Larry Klayman
2000 Pennsylvania Ave NW, #345
Washington, DC 20006
leklayman@yahoo.com

/s/ *Craig S. Primis, P.C.*
Craig S. Primis, P.C.