UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MARK ZUCKERBERG and FACEBOOK, INC.,<br><br>　　　　Defendant. | Civil Action No: 11-874 (RBW) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

　　　　Plaintiff, Larry Klayman, filed a complaint seeking injunctive relief as well as enjoining Defendant from allowing postings of webpages advocating violent, hateful and threatening messages towards Jews. Additionally, Plaintiff seeks compensatory and punitive damages as a result of Defendants' conduct. Plaintiff, a civil and individual rights activist of Jewish descent, is widely known in the Muslim/Arabic world for his support of Israel. Am.Compl. ¶ ¶ 4, 11. In addition to being a traveler to Israel, Plaintiff has taken a firm stance in opposition to the formation of a Palestinian state on the West Bank. As such, Plaintiff is seeking relief from Defendant's reckless conduct in allowing and in fact furthering the posting of webpages that advocated the killing of Jewish people to obtain the state on the West Bank, which directly placed Plaintiff in immediate harm., *Id*. ¶ 4. Put simply, Plaintiff who travels to Israel and works in Washington, D.C., which has a large Arabic and Palestinian population, has a target on his back. In response, Defendants have moved to dismiss Plaintiff's complaint on various grounds.

Under Federal Rule 12(b)(6), the court must deny Defendant's motion to dismiss unless it appears to a certainty that Plaintiff would be entitled to no relief under any state of facts which could be proved to support a claim. *Banco Continental v. Curtiss National Bank of Miami Springs*, 406 F.2d 510, 514 (5th Cir.1969); *see also Gibson v. United States*, 781 F. 2d 1334, 1337 (9th Cir. 1986) (holding dismissal is improper unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") In considering a motion to dismiss, all allegations of material facts alleged in the complaint must be taken as true and construed in the light most favorable to the nonmoving party. *Allman v. Phillip Morris, Inc.*, 865 F. Supp. 665, 667 (S.D.Cal.1994), citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). As demonstrated below, Defendant's motion cannot survive the application of these standards.

### ARGUMENT

**I. THE COMMUNICATION DECENCY ACT DOES NOT BAR THE PLAINTIFF'S CLAIMS**

Defendant's first claim relies on the immunity provided to interactive communication service providers under the Communication Decency Act of 1996 ("CDA"), 47 U.S.C. § 230. The CDA is designed to promote the free exchange of information and ideas and to encourage voluntary monitoring for offensive or obscene material. *Barnes v. Yahoo! Inc.* 570 F. 3d 1096, 1099-1100 (9th Cir. 2009) citing *Carafano v. Metrosplash.com, Inc.* 339 F. 3d 1119, 1122 (9th Cir. 2003). Defendant inappropriately alleges "this case is the quintessential example of a suit barred as a matter of law by § 230." Def.'s Motion to dismiss at 5. While the CDA does provide immunity to interactive computer service

providers for content created by a third-party user, the immunity is not absolute. Rather, relying on Congress' intent as well it public policy concerns, the Court should deny Defendant's motion to dismiss given the CDA's inapplicability to the case at hand.

    A. **An exception for such claims should be implied given Congress' legislative intent in enacting the CDA**

In enacting the CDA, Congress sought to promote the free exchange of ideas while encouraging self-regulation by internet service providers. *Yahoo!* 570 F. 3d at 1099-1100. However, it was not Congress' intent to grant "…a vast, limitless immunity…" *Chicago Lawyers' Committee for Civil Rights under the Law v. Craiglist*, 461 F. Supp. 2d 681, 696 (N.D. Ill. 2006). In fact, the act itself draws out limitations as to its applicability, excluding immunity in criminal cases, intellectual property law cases, and cases involving state laws that are consistent with the CDA. Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions may be implied provided there is evidence of a contrary legislative intent. *Craiglist*, 461 F. Supp. 2d at 699.

    It is more than unlikely that Congress intended a broad grant of immunity for those interactive computer services that do not screen any third-party content whatsoever. *Craiglist*, 461 F.Supp. 2d at 697, citing *Doe v. GTE Corp.*, 347 F.3d 655, 660 (7th Cir.2003). If such protection was provided, then internet service providers may "…be expected to take the do-nothing option and enjoy immunity because precautions are costly." *Yahoo!*, 570 F. 3d at 1105 citing *GTE Corp*. 347 F. 3d at 660. Thus, consistent with Congress' legislative intent, the CDA is inapplicable to the case at hand given Facebook's repeated inactions and failures to self-regulate.

The policy behind the CDA is to encourage self-regulation by such internet service providers without fear of liability. Defendant fails to notice that the CDA's purpose is not to provide immunity to a social network such as Facebook who repeatedly idly stands by, refusing to engage in any self-regulation. The immunity provided by the CDA is not intended to be used as an excuse by internet service providers who fail to take any action whatsoever. *Yahoo!*, 570 F. 3d at 1105. Here, Facebook is simply using the CDA as an excuse for its failure to regulate the contents of its pages. Upon notice of the Third Intifada Page, Facebook failed to take any timely regulatory action in removing the hateful, violent and aggressive messages. Am. Compl. ¶ 7. Rather, Facebook ignored the repulsive and highly dangerous content that advocated wild incitement, promoted the killing of Jews and spoke of liberating Jerusalem through violence. *Id*. In fact, Facebook continued to fail to act by allowing several other similar pages promoting analogous violent ideals to be posted. *Id*. Thus, contrary to Defendant's allegation, such a case is not a "quintessential example" of cases barred by the CDA. Def.'s Motion to Dismiss at 5. It is not within Congress' intent to allow Facebook to merely take no action in self-regulation and be shielded by the immunity granted by the CDA.

**B. The CDA only applies to claims that involve publishing as an element**

The defendant additionally fails to recognize yet another limitation to the CDA's applicability. The relevant portion of §230 states: "No provider or user of an interactive computer service shall be treated as a publisher or speaker of any information provided by another information content provider." *Craiglist*, 461 F.Supp. 2d at 668, citing 47 U.S.C. §230(c)(1). Specifically, §230 precludes courts from entertaining claims that

would place a computer service provider in a publisher's role, particularly when exercising publisher's traditional editorial functions such as deciding whether to publish, withdraw, postpone, or alter content. *Craiglist*, 461 F.Supp. 2d at 668. The pertinent issue in determining the applicability of the CDA is whether the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker. *Yahoo!* 570 F. 3d at 1101.

The claims at hand do not derive from Defendant's status or conduct as a publisher or speaker. Rather, they are based on Defendant's failure to act in compliance with its duties. The duty Defendant violated springs from a contract, thus excluding immunity under the CDA. *Yahoo!* 570 F. 3d at 1107 (holding that Defendant internet service provider's liability under a promissory estoppel theory was not precluded by the CDA. The court reasoned that the internet service provider was liable as a counter-party to a contract, not as a publisher or speaker).

Similarly, while Facebook claims that no duty arose out of the contractual relationship between the parties because of the express disclaimer, Defendant fails to note the language of the Statement of Rights as well as the relevance of the policy behind the CDA. Facebook concedes that the language of the Statement of Rights explicitly state "We do our best to keep Facebook safe…" Def.'s Motion to Dismiss at 16. Importantly, Facebook has explicitly notified users of Facebook that it takes action in ensuring the promotion of its safety. Moreover, as previously mentioned, the policy of the CDA is to encourage self-regulation for exactly this purpose. Facebook's assurance "to do its best" raises the implication that it would take some action if the need arose. Despite its promise, Facebook failed to take any timely

action upon notice of the threatening messages posted on the page. Rather, it allowed the page to remain posted for many days before finally removing the message. Am.Compl. ¶ 7. Additionally, Facebook merely stood-by as several other similar pages emerged. *Id*. Contrary to Defendant's allegations, there was a duty that arose out of the contractual if not a fiduciary relationship between the parties as indicated by Facebook's Statement of Rights. Thus, the CDA immunity does not bar Plaintiff's claim since the issue isn't whether Facebook acted as a publisher or speaker, but rather that Facebook failed to take any action whatsoever despite contractual and/or fiduciary obligations.

C.  The CDA does not provide immunity to defendant given Facebook's status as a content provider

In enacting the CDA, Congress sought to immunize the removal of user-generated content, not the creation of content by interactive computer service providers. *Swift v. Zynga Game Network Inc*. WL 4569889, 4 (N.D. Cal. Nov. 3, 2010, citing *Fair Housing Council of San Fernando Valley v. Roomates.Com, LLC*., 521 F.3d 1157, 1163 (9th Cir.2008). An internet computer service provider may be found liable if it is responsible, in whole or in part, for creating or developing the content. *Zynga*, WL 4569889 at 5. An interactive computer service provider falls within the exceptions to the CDA and becomes liable if it contributes materially to the alleged illegality of the conduct. *Zynga*, WL 4569889 at 4, citing *Roomates.Com, LLC*., 521 F.3d at 1166. While there is a distinction between a website that merely provides "neutral tools" that may be utilized by third parties to post unlawful content and websites that both elicits the allegedly illegal

conduct and makes aggressive use of it in conducting business, Defendant's website clearly falls in the latter category. *Zynga*, WL 4569889 at 4.

The defendant concedes that Facebook is an online social-networking service that allows users to share content with others and opinions about world events. Def.'s Motion to Dismiss at 2-3. Users are able to view content shared by other Facebook users on one or more of the hundreds of millions of Facebook pages. *Id*. at 3. Simply put, the success and use of Facebook is directly related to the availability of such pages. It is in Facebook's best interest to maintain subscriber use in its website by advocating the creation of various post, thus making aggressive use of such pages in its conduction of business. Facebook encouraged such pages with violent messages by failing to remove the Third Intifada Page in a timely manner. Am.Compl. ¶ 7. Instead, Facebook allowed the page to remain for weeks, exposing many to its violent message. *Id*. Other pages with similar messages also arose given Facebook's continuous inaction. *Id*. ¶ 7. Thus, given the aggressive use of such pages in conducting business, in conjunction with implicit encouragement of such conduct, Facebook is deemed to be a content provider subject to liability.

**D. Defendant's motion to dismiss should be denied given the limited nature of Federal Rule 12(b)(6) and the potential status of Facebook as a content provider**

In considering a Rule 12(b)(6) motion, the court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Zynga*, WL 4569889 at 2, citing *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir.2007). When dismissal is sought based on an

affirmative defense, "the defense clearly must appear on the face of the pleading." *Zynga*, WL 4569889 at 2, citing *McCalden v. California Library Ass'n,* 995 F. 2d 1214, 1219 (9th Cir.1990). § 230 is an affirmative defense that a plaintiff is not required to plead around. *GTE Corp.*, 347 F. 3d at 657. Given the limited nature of a Rule 12(b)(6) challenge, a motion to dismiss based on the CDA immunity should be denied when there is ambiguity. *Zynga*, WL 4569889 at 6 (denying a motion to dismiss based on CDA immunity because it was unclear whether the internet service provider would be considered an "interactive computer service provider" and whether it would fall under the "information content provider" exception). Given the potential for Facebook to be considered a content provider and given its failure to act despite a duty, these issues should not be resolved at this stage of the case. Additionally, given that Defendant is raising the affirmative defense of §230, a motion to dismiss is improper and thus, should be denied.

## II.  MOTION TO DISMISS SHOULD BE DENIED GIVEN PLAINTIFF'S MERITORIOUS TORT CLAIMS

Defendant inappropriately argues that the motion to dismiss should be granted because the state-law tort claims would fail on their own terms. Def.'s Motion to Dismiss at 11. However, in reaching the merits of the claim, the facts strongly support the allegation that Defendant is liable for assault, negligence, and intentional infliction of emotional distress.

**A. Defendant is liable for assault through its status as a joint tortfeasor, acting in concert with the on-going threats in engaging in acts that encourage tortious conduct and establish a common design**

Defendant argues that the assault claim fails because Facebook was not acting in concert and thus, is not a joint tortfeasor. *Id*. at 13. Defendant cites to § 876 of Restatement (Second) of Torts in supporting his motion to dismiss. *Id*. However, Defendant fails to take notice of the comment to clause b of §876. Comment b explains that "advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the advisor as participation or physical assistance. *Chavers v. Gatke.*, 132 Cal. Rptr. 2d 198, 205, citing to Rest.2d, §876, com.d. Additionally, liability may be imposed when the defendant engages in acts "pursuant to a common design." Rest.2d, §876, com.b.

Facebook, through inaction, encouraged the unlawful conduct of a third party user. Specifically, Facebook had notice of the page titled "Third Palestinian Intifada," was notified of the pages' advocacy of unlawful violence and terrorism, failed to remove the website for many days, and then proceeded to continue to allow similar websites to be posted. Am.Compl. ¶ 7. As a result of Facebook's failure to remove the website and further inaction in preventing similar websites from emerging, Facebook encouraged the unlawful conduct of violence. Moreover, Facebook's continuous inaction and permissive behavior in encouraging such hateful pages evidences Facebook's engagement in acting pursuant to a common design.

Defendant also incorrectly argues that Facebook's conduct does not amount to assault since mere words alone is insufficient. Def.'s Motion to Dismiss at p. 14. While words alone are not enough, "…words are never spoken in a vacuum, and they cannot be utterly

divorced from past conduct, or from the accompanying circumstances." *Clark v. Commonwealth*, 54 Va.App. 120, 129 (Va.Ct.App.2009), citing Restatement (Second) of Torts § 31 cmt. d (1965). Under tort law, an overt act may be committed merely with the "intent to place the victim in fear or apprehension of bodily harm" where the act creates such reasonable fear or apprehension in the victim." *Clark*, 54 Va.App. at 129, citing *Carter v. Commonwealth of Virginia*, 606 S.E.2d, 839, 841 (2005).

While alleging there was no overt act, Defendant ignores the fact that Facebook was aware of the Third Intifada Page and failed to remove the website, despite knowing that its users would be exposed to the threatening messages and such violent and menacing views would potentially gain support, increasing the likelihood of wild incitement. Am.Compl. ¶ 7. After all, the Intifada page and the continued republication of it did, in fact, gain support as evidenced by the number of participants on such pages. *Id.* ¶ 7. Thus, Facebook's failure to remove the page after being notified of its violent, threatening and unlawful message and continuance of allowing republications of similar messages constitutes an overt act, putting Plaintiff in reasonable apprehension of severe bodily harm and/or death.

Third, Defendant alleges that plaintiff fails to meet the "imminence" requirement of an assault claim. Def.'s Motion to Dismiss at 14-15. For assault, "apprehension of immediate bodily contact" is required. Restatement (Second) of Torts § 31. Assault does not, however, require the present ability to inflict harm when a person acts in a manner intended to put the victim in reasonable fear or apprehension and causes the victim such fear or apprehension. *Carter*, 606 S.E.2d at 842. Defendant argues that the threatening statements found on the Third Intifada Page stated that the "attacks on Jews and others

will commence on or about May. 15, 2011," six weeks after Plaintiff filed his initial complaint and thus, there was no apprehension of imminent injury. Def.'s Motion to Dismiss at 14.

However, Defendant ignores critical facts evidencing apprehension of imminent injury to Plaintiff. The Third Intifada Page advocated a violent revolt by Muslims against non-Muslims, particularly against Jews. Am.Comp. ¶ ¶ 8, 9. The page maintained over 360,000 participants. Am.Comp. ¶ 7. Moreover, other pages advocating similar wild incitement emerged, maintaining over 7,000 subscribers. *Id.* ¶ 7. Plaintiff is an American citizen of Jewish Origin who has remained in the public eye. *Id.* ¶ 11. In addition to being a civil and individual rights activist, Plaintiff is also a well-known lawyer, a writer, as well as a television and radio commentator. *Id.* ¶ 11. In addition to traveling to Israel, Plaintiff has taken a firm opposition to the formation of a Palestinian state, particularly through the killings of Jewish people. For this, he is highly known throughout the Muslim/Arabic world. Am.Compl. ¶¶ 4, 11. In other words, Plaintiff is highly recognizable as an influential public figure with Jewish origin. Facebook's failure to remove the Third Intifada page as well as allowing similar websites to emerge, created apprehension of immediate bodily harm and/or death in Plaintiff. Being highly recognizable, in conjunction with the Facebook pages' advocacy of violence could have motivated any single member of the 360,000 participant to harm Plaintiff given his Jewish decent. *Id.* ¶ 11. While the page stated that the attacks would commence on May 15, 2011, the general advocacy of violence towards Jewish people is sufficient to create more than reasonable apprehension and fear of immediately bodily injury and death in Plaintiff.

**B. Defendant is liable for negligence given the duty Facebook owed to plaintiff and damages suffered by plaintiff as a result of defendant's breach of duty**

Defendant claims that the motion to dismiss should be granted as a result of Plaintiff not specifically stating actual damages. Def.'s Motion to Dismiss at 15. In other words, Defendant argues that Plaintiff merely stated the elements of negligence, not actual specific damages. Moreover, Defendant further alleges that no duty was owed to Plaintiff as a result of the express disclaimer. Def.'s Motion to Dismiss at 16.

As mentioned, Defendant's express disclaimer provides that while Defendant does not guarantee that Facebook will be safe or secure, the statement that Facebook does its "best to keep Facebook safe" creates a duty. The defendant owed a duty to take reasonable steps to mitigate harmful, violent and threatening messages. The fact that Facebook merely idly stood around, failing to take any timely action upon notification of the threatening and menacing message, indicates that Facebook breached its duty of "doing its best" to increase the safety of its website. Additionally, Facebook's unreasonable delay in removing the Third Intifada Posting while allowing further violent messages to be posted further underscores Defendant's negligence, gross negligence and recklessness. Am.Compl. ¶19.

Plaintiff, an American citizen of Jewish descent and a pro-Israel activist, pleaded with Defendant to remove the site. Am.Compl. ¶¶ 7, 11. Defendant unreasonably delayed such removal and further inflicted injury on Plaintiff by allowing similar sites to emerge. Am.Compl. ¶ 7. Plaintiff was thus faced with fear of violent and deadly attacks on himself as well as on others who were also directly affected. Thus, in breaching its duty, Defendant caused Plaintiff actual harm.

Finally the other counts of the complaint are well plead and must also proceed.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss under Rule 12(b)(6).

Respectfully submitted,

_____
/s/ Larry E. Klayman
DC Bar No.: 334581
2020 Pennsylvania Avenue NW, #345
Washington, DC 20006