# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, <br><br> Plaintiff, <br><br> v. <br><br> MARK ZUCKERBERG and FACEBOOK, INC., <br><br> Defendant. | Civil Action No: 11-874 (RBW) |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

In response to Plaintiff's amended complaint, Defendants' renewed their motion to transfer this action under 28 U.S.C. §1404(a) to the United States District Court for the Northern District of California in San Jose, California. Plaintiffs oppose Defendants' motion to transfer this case given the substantial deference granted to Plaintiff's choice in forum, the factual bases for the forum in the District of Columbia (DC), and policy considerations weighing in favor of maintaining the case in DC.

### ARGUMENT

### I. DEFENDANTS' MOTION TO TRANSFER SHOULD BE DENIED GIVEN THE SUBSTANTIAL DEFERENCE DUE PLAINTIFF'S CHOICE IN FORUM

28 U.S.C. §1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In order to succeed on a motion to transfer, Defendants "…have the heavy burden of establishing that plaintiff's choice of forum is inappropriate." *Shapiro, Lifschitz, & Schram, P.C. v. Hazard*, 24 F. Supp.2d 66, (D.D.C. 1998). The court may not transfer a case to another forum simply because another forum,

in the court's view, may be superior to that chosen by Plaintiff. *Nat'l Wildlife Fed'n v. Harvey,* 437 F.Supp. 2d 42, 46 (D.D.C.2006).

In balancing the public and private interest, it is clear that Plaintiff's choice in forum should be granted substantial deference. *Shapiro, Lifschitz, & Schram*, 24 F.Supp. 2d at 71. Given this great deference allotted to Plaintiff's choice in forum, as well as the fact that the public and private interest weigh in favor of maintaining the case in the DC, Defendants fail to meet their heavy burden. Thus, Defendants' Motion to Transfer should be denied.

### A. In examining the private and public interest considerations, it is clear that they weigh in favor of maintaining the case in Plaintiff's chosen forum of the District of Columbia

In evaluating a motion to transfer, a court must weigh a number of private and public interest factors, and Plaintiff's chosen forum is of paramount consideration. *Green v. Footlocker Retail*, Inc., Civil Action No. 04-1875, 2005 WL 1330686 at *1, citing *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F.Supp. 22, 25 (D.D.C.1997). The private interest considerations include examination of (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. The public interest considerations include (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Shapiro, Lifschitz & Schram*, 24 F.Supp.2d at 71. In examining these factors, it is evident that DC is the proper venue.

#### 1. *The private interest considerations support the denial of Defendants' motion to transfer, given its substantially weighing in favor of maintaining the case in the District of Columbia*

"It is almost a truism that a plaintiff's choice of forum will rarely be disturbed and, so far as the private interests of the litigants are concerned, it will not be unless the balance of convenience is strongly in favor of the defendant." *Gross v. Owen*, 221 F.2d 94, 95 (D.C.Cir.1995). This is especially true if the plaintiff is a resident of the chosen forum and the events underlying the claim have a significant connection with the forum. *Shapiro, Lifschitz & Schram*, 24 F.Supp.2d at 71. Such is the situation in the case at hand.

First, Plaintiff not only has resided in DC but also engages in a substantial amount of business there. Specifically, Plaintiff, at all material times, does business at 2020 Pennsylvania Ave. NW, #345, Washington D.C. 20006. Am.Compl. ¶2. Plaintiff maintains his position as the Chairman and General Counsel of Freedom Watch, located an incorporated in DC. *Id*. Moreover, even further supporting the denial of Defendants' motion to transfer is the fact that both Plaintiff's personal and professional Facebook pages explicitly stated that Plaintiff lives and works in DC.

Additionally, as the facts strongly indicate, the claims involved, and the events underlying them, arose in DC. Defendants' website (Facebook.com) is used throughout the United States, particularly in the DC. Am.Compl. ¶5. In fact, Facebook maintains its own webpage titled "Facebook Washington DC," discussing the presence of a Facebook office within the District, and further providing a map and directions to the office. (http://www.facebook.com/FacebookDC?sk=info) Additionally, Defendant not only does business in DC but its content is also widely viewed and read there. *Id*. Pertinent to the case at hand is the fact that Facebook's threatening and unlawful content was viewed by not only Plaintiff but by other residents of DC as well, which is where Plaintiff spent about 30 years of his life. Am.Compl. ¶7. The content of the webpage advocated the killing of persons of Jewish decent by Palestinian radicals. *Id*. Many of such radicals not only reside in the DC, but a great number have been arrested there as well. Am.Compl. ¶5. Arguably, the highly political arena of the DC, as well as its citizens, have often found themselves the target of violent terrorist behavior and attacks. The advocacy engaged in by Defendants' further subjected persons such as Plaintiff to potential substantial harm or death. The viewing of such pages by Plaintiff took place while

Plaintiff resided and conducted business in DC and Defendants' success and revenue is partially due to their presence there. Thus, given Plaintiff's and Defendants' presence in DC as well as the fact that the events underlying the claims took place in the District, Defendants' Motion to Transfer is unfounded.

Any allegation made by Defendants' that California (Defendants' choice of forum) is also connected to the events underlying the claim does not outweigh the deference due Plaintiff's choice of forum. *Shapiro, Lifschitz & Schram*, 24 F.Supp. 2d at 72 (holding that although substantial connections to California existed, they were no more significant than those to the District of Columbia). It is difficult to conceive of any basis in which the events underlying the claim would be determined to have significantly arisen in California. While Defendant has corporate headquarters in Palo Alto, California, this is insufficient to provide a basis to transfer the case. Am.Compl. ¶4. To the contrary, Defendants have substantial contacts to DC, as the seat of government and their business requires lobbying, and other related activities there, notwithstanding their internet presence among the nation's political and government elite and DC's populace as a whole. Rather, given the deference provided to Plaintiff's choice of forum, the significant connection to the DC, as well as the minimal connection to California, Defendants' Motion to Transfer should be denied.

Additionally, the convenience of the witnesses and the parties clearly support denial of Defendants' motion. In fact, the most critical factor to examine under 28 U.S.C. §1404(a) is the convenience of the witnesses. *Chung v. Chrysler Corp.*, 903 F.Supp. 160, 164 (D.D.C. 1995). Defendants' mere claim that it is a New York Corporation and has maintained corporate headquarters in Palo Alto, CA is insufficient to support their motion. Am.Compl. ¶4. As mentioned, Defendants maintain an office in DC. Additionally, the crucial witnesses, including Plaintiff who was directly harmed by Defendant, is located in DC, conduct business in DC, and considers DC his base of operations. Am.Compl. ¶2. Moreover, since the claims arise out of Defendants' conduct affecting those located in DC, increasing the potential of substantial harm to the residents of the District, a great number of witnesses are located in DC. The fact that this might pose an "issue" to Facebook, who benefits by conducting business in DC, is

unsatisfactory, particularly given that Plaintiff, as a witness, would face significant inconvenience and increased cost if the case were tried in the competing forum.

Furthermore, the fact that the DC has been the target of terrorist attacks further supports the denial of Defendants' Motion. In other words, the sources of proof that Plaintiff relies on are located in DC, involve DC, and affect DC. Defendants' conduct directly put the citizens of the highly political arena of DC in harms way through its advocacy of violence, hatred, and even terrorism. In fact, Plaintiff, an American citizen of Jewish Origin, is widely known in the Muslim/Arabic world for his support of Israel. Am.Compl. ¶11. Additionally, his business is conducted in DC. Am.Compl. ¶2. Not only is he a target of the violent attacks by radical Palestinians and Muslims in which Facebook's webpage advocated, many of such radicals who read the content of the webpage may be found in DC. Am.Compl. ¶5. After all, the Intifada Facebook page had over 360,000 participants and the additional pages with analogous views that emerged gained over 7,000 subscribers. Am.Compl. ¶7. In fact, many extremists who hold such violent and repulsive ideals have been found and arrested in DC. We cannot forget that DC was a principal target of September 11. The webpages remained visible for several days, exposing many to its contents, despite Plaintiff's pleas with the Defendants' to remove the sites given their potential to incite violence and terrorism. *Id*. Thus, given the direct effects and connection with DC, the sources of proof will likely be found in this District, not in California.

It is clear that Defendants' only real interest in moving the case to the San Francisco area is to obtain what they perceive to be a strategic advantage and get what they perceive to be a more favorable judge and jury – as this is in their "home court." Facebook's wealth and "prestige" and political influence will aid them, they obviously believe. This forum shopping is unacceptable and should respectfully not be permitted.

*2.     The public interest considerations support the denial of Defendants' motion to transfer, given its substantially weighing in favor of maintaining the case in the District of Columbia*

The consideration of the public interest factors also supports denial of Defendants' motions. DC has a local interest in deciding its local controversies, particularly since Defendants substantially benefits from conducting business in the District. Primarily, Defendants not only maintain an office in DC, but also gains revenue through its presence in the District. Defendants concede that Facebook is an online social-networking service that allows users to share content. Def.'s Motion to Dismiss at 2-3. Users are able to view contents shared by others on one or more of the hundreds of millions of Facebook pages. *Id*. at 3. It is obvious that the existence of pages, such as the Third Palestinian Intifada page and its successors, as pled in the Amended Complaint, that advocated violence, boost Facebook's circulation and revenues. Am.Compl. ¶7. The existence of this page, as well as other analogous pages that emerged, directly put DC and its citizen in danger given its incitement of and call for violence and unlawful conduct. Thus, DC, given its highly recognized position as a political forum, has a great local interest in protecting its citizen from such violence and terrorism.

Further evidencing DC's interest in deciding this controversy is the fact that the events underlying this claim arose in DC, affecting the citizens of the District. Plaintiff, as well as others directly affected by Defendants' conduct, engages in business in this District. Am.Compl. ¶2. Moreover, given Plaintiff's position as a political and public figure, well-known in the Muslim/Arabic world for his support of Israel and opposition to a Palestinian state on the West Bank, in conjunction with his presence in the District, DC is arguably a prime target for the terrorist conduct that was advocated. Am.Compl. ¶¶2, 11. Additionally, DC is historically faced with dealing with radical Palestinians engaging in unlawful conduct, given that many live and interact with the District and have, in fact, been arrested within its geographic areas. Am.Compl. ¶5. Facebook's conduct, therefore, not only promoted the advocacy of violence and unlawful conduct, but was also observed by and directed towards the citizens of DC. Given the District's interest in preventing further unlawful conduct by radical Palestinians, the Court has a great interest in deciding this matter.

Additionally, public-interest considerations that weigh against a transfer include obvious fact that the defendants are forum shopping. *Greater Yellowstone Coalition v. Bosworth*, 180 F.Supp.2d. 124, 129 (D.D.C. 2001) (holding that transfer was

inappropriate given the "plausible possibility that the defendants are using Section 1404(a) as a means of forum shopping…"). In the case at hand, the evidence indicates that there is much more than a plausible possibility that the Defendants' are forum shopping. The events underlying the claims arose in the DC, with minimal relevance to California. Moreover, Defendants' plainly benefit from their presence in DC given that they maintain an office in the District and have a wide viewership by citizens of the District. Am.Compl. ¶5. Defendants' are now attempting to forum shop to avoid the laws of the District in which they reap benefits as well as caused harm. Thus, given the public interest in DC deciding its local controversies, Defendants' Motion to Transfer must be dismissed.

## CONCLUSION

In consideration of the private and public interest as well as the substantial deference due Plaintiff's choice in forum, Plaintiff respectfully request Defendants' Motion to Transfer be denied.

Respectfully submitted,

_____

/s/ Larry E. Klayman
D.C. Bar No.: 334581
2020 Pennsylvania Avenue NW, #345
Washington, D.C. 20006