**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| **LARRY KLAYMAN**,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>**MARK ZUCKERBERG** and **FACEBOOK, INC.**,  )<br>)<br>Defendants.  )<br>) | Civil Case No. **11-874 (RBW)**<br><br>**ORAL ARGUMENT REQUESTED** |

**<u>DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS</u>**


Dated: August 30, 2011

Craig S. Primis, P.C. (D.C. Bar No. 454796)
K. Winn Allen (D.C. Bar No. 1000530)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
craig.primis@kirkland.com
winn.allen@kirkland.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

                                                                       **Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................1

I.     PLAINTIFF RELIES ON AN INCORRECT LEGAL STANDARD IN OPPOSING FACEBOOK'S MOTION TO DISMISS..................................................1

II.    THE COMMUNICATIONS DECENCY ACT REQUIRES DISMISSAL OF PLAINTIFF'S COMPLAINT................................................................................2

        A.     This Court Should Not Create An Unsupported Implied Exception To CDA Immunity .............................................................................................2

        B.     Plaintiff's Claims Attempt To Hold Facebook Liable As a Publisher.....................5

        C.     Facebook Was Not Involved In The Creation or Development Of The Content At Issue...................................................................................................7

        D.     This Court Can Consider CDA Immunity At The Motion To Dismiss Stage........................................................................................................8

III.   PLAINTIFF'S TORT CLAIMS FAIL ON THEIR OWN TERMS ...................................9

        A.     Plaintiff's Assault Claim Fails As A Matter of Law................................................9

        B.     Plaintiff's Negligence Claim Fails As A Matter of Law .......................................11

        C.     Plaintiff's Claim For Intentional Infliction Of Emotional Distress Fails As A Matter Of Law...........................................................................................12

CONCLUSION......................................................................................................................13

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ................................................................................................. 1, 2

*Austin B. v. Escondido Union Sch. Dist.*,
  57 Cal. Rptr. 3d 454 (Cal. Ct. App. 2007) ...................................................................... 10

*Banco Cont'l v. Curtiss Nat'l Bank of Miami Springs*,
  406 F.2d 510 (5th Cir. 1969) ............................................................................................ 2

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................................................................. 4, 5, 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 1, 2

*\*Blumenthal v. Drudge*,
  992 F. Supp. 44 (D.D.C. 1998) ......................................................................................... 4

*Busby v. Capital One, N.A.*,
  772 F. Supp. 2d 268 (D.D.C. 2011) .................................................................................. 2

*Demarest v. Manspeaker*,
  498 U.S. 184 (1991) .......................................................................................................... 3

*Dimeo v. Max*,
  433 F. Supp. 2d 523 (E.D. Pa. 2006) ................................................................................ 9

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) ............................................................................................ 4

*Doe v. MySpace, Inc.*,
  629 F. Supp. 2d 663 (E.D. Tex. 2009) .............................................................................. 9

*Fair Hous. Council of San Fernando Valley v. Roomates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ...................................................................................... 7, 8

*Gerard v. Ross*,
  251 Cal. Rptr. 604 (Cal. Ct. App. 1988) .......................................................................... 10

*Gibson v. United States*,
  781 F.2d 1334 (9th Cir. 1986) .......................................................................................... 2

*Global Royalties, Ltd. v. Xcentric Ventures, LLC*,
  544 F. Supp. 2d 929 (D. Ariz. 2008) ................................................................................ 9

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ........................................................................ 8, 9

*Green v. America Online*,
  318 F.3d 465 (3d Cir. 2003) .............................................................................................. 6

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*,
   284 F. Supp. 2d 15 (D.D.C. 2003) .................................................................................. 13

*In re Christian S.*,
   7 Cal. 4th 768 (Cal. 1994) ............................................................................................... 11

*Marconi v. Officer One*,
   2006 WL 2827862 (N.D. Cal. 2006) ............................................................................... 10

*Miles v. Raycom Media, Inc.*,
   2010 WL 3419438 (S.D. Miss. 2010) ............................................................................... 9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ............................................................................................ 9

*\*Parisi v. Sinclair*,
   774 F. Supp. 2d 310 (D.D.C. 2011) .................................................................................. 8

*\*Ramey v. Darkside Prods., Inc.*,
   2004 WL 5550485 (D.D.C. May 17, 2004) .................................................................. 2, 3

*Young v. Facebook, Inc.*,
   2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ................................................................. 12

*\*Zeran v. America Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ............................................................................................ 6

**Statutes**

*47 U.S.C. § 230 ............................................................................................................ passim

**Treatises**

*Prosser & Keeton on Torts* § 46 (5th ed. 1984) ............................................................... 10

*Restatement (Second) of Torts* § 31 ........................................................................... 10, 11

*Restatement (Second) of Torts* § 876(b) ............................................................................ 9

\* — denotes authorities chiefly relied upon

## INTRODUCTION

Plaintiff's opposition confirms that this action is a publicity stunt devoid of any legal merit and should be swiftly dismissed. In attempting to avoid the immunity granted by § 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, plaintiff asks this Court to commit legal error and recognize an implied exception to CDA immunity that finds no support in text or precedent. Plaintiff further invites legal error by asking the Court to recast his tort-law causes of action as breach-of-contract claims and to hold Facebook responsible for content that it did not create, develop, edit, or produce. Even looking past the plain terms of the CDA, plaintiff's tort claims are substantively meritless and warrant dismissal in their own right. For the reasons set forth in Facebook's opening brief and this reply, the Court should dismiss the Amended Complaint for failure to state a claim.[1]

## ARGUMENT

### I. PLAINTIFF RELIES ON AN INCORRECT LEGAL STANDARD IN OPPOSING FACEBOOK'S MOTION TO DISMISS

Even before getting to the merits of his claim, Plaintiff makes a fundamental legal error by insisting that this Court cannot grant Facebook's motion to dismiss unless it "appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim." Pl's. Opp. at 2 (quotation marks omitted). Of course, that standard was expressly rejected by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1944 (2009), and plaintiff errs by asking this Court to rely on pre-*Twombly* decisions that apply that now-discredited standard. *See* Pl's. Opp. at 2 (citing *Banco Cont'l v. Curtiss*

---

[1] In its Order of August 19, 2011, the Court noted that plaintiff had never filed his First Amendment Complaint with the Court. *Id*. The Court ordered plaintiff to file a copy of his First Amended Complaint on or before August 22, 2011, or risk dismissal for "failure to prosecute pursuant to Federal Rule of Civil Procedure 41." *Id*. As of the filing of this reply brief, plaintiff still had not filed a copy of his First Amended Complaint. Facebook nevertheless files this reply brief in accordance with the parties' August 17, 2011 Joint Stipulation [Dkt. # 24].

1

*Nat'l Bank of Miami Springs*, 406 F.2d 510, 514 (5th Cir. 1969), and *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986)); *see also Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 285 (D.D.C. 2011) ("[T]he court reiterates that the 'no set of facts' standard on which the plaintiff relies has been abrogated by the Supreme Court's rulings in *Twombly* and *Iqbal*."). Under current law, the governing standard on a motion to dismiss is whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

## II. THE COMMUNICATIONS DECENCY ACT REQUIRES DISMISSAL OF PLAINTIFF'S COMPLAINT

As numerous courts across the country have recognized, the broad immunity afforded by § 230 of the CDA requires dismissal of any lawsuit in which a plaintiff seeks to hold an interactive computer service provider liable for publishing content created by a third-party user of the service. *See* Mot. to Dismiss at 6 & n.2 (citing cases); *Ramey v. Darkside Prods., Inc.*, 2004 WL 5550485, at *7 (D.D.C. May 17, 2004) (describing § 230 immunity as "quite robust"). Plaintiff does not dispute that Facebook is an interactive computer service provider and that he is seeking to hold Facebook liable for publishing content created by a third-party user of the service. Those concessions should be the beginning and the end of this case. Nonetheless, plaintiff offers up four arguments for why his claims should proceed even in the face of the CDA's plain applicability. None is persuasive.

### A. This Court Should Not Create An Unsupported Implied Exception To CDA Immunity

Plaintiff begins by asking this Court to create out of whole cloth an implied exception to § 230's broad grant of immunity "for those interactive computer services that do not screen any third-party content whatsoever." Pl's. Opp. at 3. Such an unwritten exception, plaintiff

maintains, would allow his claims to proceed here because Facebook "refus[es] to engage in any self-regulation." *Id.* at 4.

This Court should reject plaintiff's invitation to create an implied exception to CDA immunity that finds no support in text or precedent and that, in any event, would afford plaintiff no relief on the facts alleged. The plain text of § 230(c)(1)—the provision at issue in this case—affords immunity to interactive-computer-service providers such as Facebook without regard to whether those service providers choose to self-police third party content: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." The immunity afforded by § 230(c)(1) stands in stark contrast to the additional immunities afforded in § 230(c)(2), which are triggered only when a service provider engages in "action[s] voluntarily taken in good faith to restrict access" to content the service-provider deems objectionable. By including such self-policing language in (c)(2), but omitting it from (c)(1), Congress expressed an intent to confer (c)(1) immunity on all service providers, irrespective of whether a service provider chooses to engage in self-policing activities. *See Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.").

Looking beyond the plain text, plaintiff's argument finds no support in precedent from this District or elsewhere. In *Ramey*, the plaintiff asserted the exact same argument that plaintiff pursues in this case, arguing that "§ 230 immunity is limited to those who engage in Good Samaritan activities by block[ing] or screen[ing] offensive material from [their] website." 2004 WL 5550485, at *6 (D.D.C. May 17, 2004) (quotation marks omitted; alterations in original). The Court described that argument as "unpersuasive" and held that "even though Defendant does

3

not engage in 'Good Samaritan' activities, it still receives full immunity from tort liability under § 230 of the Act." *Id.*; *see also Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998) ("Congress has conferred immunity from tort liability as an incentive to Internet service providers to self-police the Internet for obscenity and other offensive material, even where the self-policing is unsuccessful ***or not even attempted***.") (emphasis added). The authorities cited by plaintiff, moreover, either declined to address whether such an exception exists, *see Doe v. GTE Corp.*, 347 F.3d 655, 660 (7th Cir. 2003), or directly held that § 230(c)(1) immunity extends even to those service providers that do not self-regulate, *see Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009) (reasoning that § 230(c)(1) affords immunity to all service providers, regardless of whether they attempt to block or screen offensive material, while § 230(c)(2) provides "an additional shield from liability" for those service provides that act to restrict access to objectionable content).

In any event, plaintiff's legally unsupported implied exception would fail on the facts alleged in this case. Plaintiff asserts that Facebook "refus[es] to engage in any self-regulation." Pl's. Opp. at 4. But that is simply not true. The Amended Complaint itself ***concedes*** that Facebook did remove the Third Intifada Page, Am. Compl. ¶ 12, and that Facebook has "removed postings immediately" at other times, *id.* ¶ 19. The Statement of Rights and Responsibilities ("Statement of Rights"), which this Court may consider on a motion to dismiss, also indicates that Facebook can and does engage in self-regulatory efforts. *See* Mot. to Dismiss Ex. 1, Allen Decl., Ex. A, § 3 ("We do our best to keep Facebook safe, but we cannot guarantee it."); *id.*, Ex. A § 5.2 ("We can remove any content or information you post on Facebook if we believe that it violates this Statement."); *id.*, Ex. A § 15.3 ("WE TRY TO KEEP FACEBOOK UP, BUG-FREE, AND SAFE, BUT YOU USE IT AT YOUR OWN RISK."). Plaintiff's own

allegations thus undermine any argument that Facebook has refused to engage in self-policing activities.

### B. Plaintiff's Claims Attempt To Hold Facebook Liable As A Publisher

Plaintiff's second argument for why Facebook should be stripped of CDA immunity is an improper attempt to change the allegations in the Amended Complaint to avoid dismissal. Pointing to *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009), plaintiff argues that CDA immunity applies only where a cause of action "derives from the defendant's status or conduct as a publisher or speaker" of content provided by another, and does not apply where a plaintiff pursues contract theories to hold a defendant liable for violating duties that "arose out of [a] contractual relationship between the parties."  Pl's. Opp. at 5.

The Ninth Circuit's decision in *Yahoo!* is of course not binding on this Court.  But even assuming that *Yahoo!* correctly interpreted the scope of the immunity afforded by § 230 of the CDA, the decision is of no help to plaintiff here because the claims included in the Amended Complaint seek to hold Facebook liable as the "publisher or speaker" of third-party content, not as a "counter-party to a contract."  570 F.3d at 1107.

By the terms of the Amended Complaint, plaintiff's tort claims are inescapably premised on Facebook's alleged decision not to remove the Third Intifada Page immediately upon being asked to do so.  *See* Am. Compl. ¶ 7 ("Defendants refused" to "take down the page"); *id*. ¶ 12 (Facebook "refused for many days" to "remove the Intifada FB Page"); *id*. ¶ 19 (defendants "refus[ed] … to remove these postings").  If there were any doubt on that score, it was surely erased by plaintiff's opposition brief.  *See* Pl's. Opp. at 4 ("Facebook failed to take any timely regulatory action in removing the hateful, violent and aggressive messages."); *id*. at 5 ("[Facebook] allowed the page to remain posted for many days before finally removing the message."); *id*. at 9 ("Facebook … failed to remove the website for many days."); *id*.

(complaining of "Facebook's failure to remove the website."). Making decisions regarding the removal of content, however, constitutes quintessential "publishing" conduct. *See, e.g.*, *Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003) (listing "decisions relating to the monitoring, screening, and deletion of content" as "actions quintessentially related to a publisher's role"); *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (listing the decision to "withdraw" content as one of "a publisher's traditional editorial functions"). Plaintiff's claims thus necessarily "derive[] from [Facebook's] status or conduct as a publisher" and are plainly barred by the immunity afforded in § 230(c)(1). Pl's. Opp. at 5.

Indeed, the Ninth Circuit in *Yahoo!* itself agreed that § 230(c)(1) bars tort claims that—like plaintiff's claim in this case—seek to hold a service provider liable for its alleged failure to remove third-party content. The court explained that "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Yahoo!*, 570 F.3d at 1103. Regardless of the substantive cause of action a plaintiff pleads, the Ninth Circuit explained, "section 230 protects from liability any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online." *Id.* (quotation marks omitted).

To be sure, the *Yahoo!* court also held that § 230(c)(1) might not bar certain breach-of-contract claims asserted against a service provider because those claims allege violations of duties that "spring[] from a contract," not from the service provider's status as a publisher or speaker. *Id.* at 1107. But that holding has no relevance to this case. Plaintiff ***has not pleaded a breach-of-contract claim***. Instead, he has alleged tort-law claims of assault, negligence, and intentional infliction of emotional distress that are founded entirely on Facebook's status as a publisher of the statements made on the Third Intifada Page and other unnamed pages. *See* Am.

6

Compl. pp. 6-8. And even if plaintiff **had** elected to include a breach-of-contract claim in his complaint, he could not hope to prevail on it, given that the Statement of Rights expressly disclaims any obligation or duty by Facebook to protect users from third-party content. *See infra* at 12.

### C. Facebook Was Not Involved In The Creation Or Development Of The Content At Issue

Plaintiff next argues that Facebook is not entitled to CDA immunity because it qualifies as an "information content provider" of the statements on the Third Intifada Page and other similar Facebook pages. 47 U.S.C. § 230(c)(1). But on the allegations of the Amended Complaint, Facebook plainly had nothing to do with providing the content found on the Third Intifada Page (or other related pages) and thus it does not fall within the "relatively restrictive" definition courts give to the phrase "information content provider." *Id*. at *7; *see* 47 U.S.C. § 230(f)(3) (defining "information content provider" as a person or entity "responsible, in whole or in part, for the creation or development" of content).

The Amended Complaint does not (and, indeed, could not) allege that Facebook had any hand in creating, developing, posting, or even editing the statements on the Third Intifada Page or any other similar page. Instead, plaintiff's theory of liability focuses on Facebook's status as a publisher of content created entirely by unnamed, third-party users of Facebook's social-networking service. At most, Facebook provided the neutral tools through which these unnamed third parties posted and disseminated the offensive statements. But as plaintiff himself acknowledges, Pl's. Opp. at 6, the provision of passive tools that enable the sharing of content among users is insufficient to deem Facebook an "information content provider." *See, e.g.*, *Fair Hous. Council of San Fernando Valley v. Roomates.Com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (*en banc*) (service provider not responsible for creation or development of content "which

7

comes entirely from subscribers and is passively displayed by [the service provider]"); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (website not information content provider "when it merely provides third parties with neutral tools to create web content, even if the website knows that the third parties are using such tools to create illegal content"); *see also Parisi v. Sinclair*, 774 F. Supp. 2d 310, 316 (D.D.C. 2011) (service provider not "information content provider" where it did not create or develop the statements at issue but merely published them on its website).

Although he does not challenge this legal framework, plaintiff maintains that Facebook should nevertheless be deemed an information content provider because it implicitly "encouraged" and "elicit[ed]" the statements at issue by "failing to remove the Third Intifada Page in a timely manner" and because it purportedly makes "aggressive use of such pages in conducting business." Pl's. Opp. at 6-7.  But there is no basis in law or logic for finding that a service provider's alleged delay in ***removing*** third-party content from its website is somehow equivalent to "creat[ing] or develop[ing]" that content.  47 U.S.C. § 230(f)(3).  Plaintiff cites no case that would support that nonsensical proposition, and any such finding would be entirely inconsistent with the protections afforded by the CDA: making decisions regarding the removal of content created, developed, and posted by third-party users is "precisely the kind of activity for which section 230 was meant to provide immunity." *Roomates.Com, LLC*, 521 F.3d at 1170.

### D.     This Court Can Consider CDA Immunity At The Motion To Dismiss Stage

Finally, plaintiff argues that the Court should deny Facebook's motion to dismiss the complaint on § 230 immunity grounds because of the "limited nature of a Rule 12(b)(6) challenge" and because "§ 230 is an affirmative defense." Pl's. Opp. at 8.  Decisions from this District, however, have held that "[t]he Court may consider CDA immunity on a 12(b)(6) motion if those facts are apparent from the face of the complaint." *Parisi*, 774 F. Supp. 2d at 316.  That

8

rule makes good sense, given that § 230 was intended to protect service providers not only from ultimate liability, but also from having to engage in extended litigation regarding claims that are plainly barred. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (affirming grant of motion to dismiss and noting that courts "aim to resolve the question of § 230 immunity at the earliest possible stage of the case because that immunity protects websites not only from ultimate liability, but also from having to fight costly and protracted legal battles") (quotation marks omitted). Courts thus routinely grant motions to dismiss on CDA grounds where, as here, the applicability of § 230 immunity is clear from the allegations of the complaint.[2]

## III. PLAINTIFF'S TORT CLAIMS FAIL ON THEIR OWN TERMS

Plaintiff also has failed to address the fundamental shortcomings in his state-law tort claims that would require dismissal even in the absence of § 230 immunity.

### A. Plaintiff's Assault Claim Fails As A Matter of Law

Facebook has identified three fatal flaws in plaintiff's assault allegations that independently and collectively justify dismissal under Rule 12(b)(6): (i) Facebook cannot be held liable under a concerted-action theory; (ii) words alone are insufficient to result in liability for assault; and (iii) the relevant threats lacked the required imminence. Plaintiff has not successfully come to grips with any of these arguments.

*First*, plaintiff maintains that Facebook is liable on a concerted-action theory because it "encouraged the unlawful conduct" of the speakers on the Third Intifada Page by "fail[ing] to remove the website for many days" and "allow[ing] similar websites to be posted." Pl's. Opp. at

---

[2] *See, e.g., Parisi*, 774 F. Supp. 2d at 316 (granting motion to dismiss on grounds of CDA immunity); *Goddard*, 640 F. Supp. 2d at 1196 (same); *Miles v. Raycom Media, Inc.*, 2010 WL 3419438, at *3 (S.D. Aug. 26, Miss. 2010) (same); *Doe v. MySpace, Inc.*, 629 F. Supp. 2d 663, 665 (E.D. Tex. 2009) (same); *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) (same); *Dimeo v. Max*, 433 F. Supp. 2d 523, 533 (E.D. Pa. 2006) (same).

9.  But any alleged delay in removing content can hardly be deemed to be the type of "***substantial*** assistance or encouragement" necessary to subject a social-networking service to joint liability for the speech of its third-party users. *Restatement (Second) of Torts* § 876(b) (emphasis added). To the contrary, is it blackletter law that merely failing to object to or prevent tortious conduct is not the kind of assistance that results in concerted-action liability. *See* Keeton et al., *Prosser & Keeton on Torts* § 46 (5th ed. 1984) ("[S]ince there is ordinarily no duty to take affirmative steps to interfere, mere presence at the commission of the wrong, or failure to object to it, is not enough to charge one with responsibility."); *see also Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 469 (Cal. Ct. App. 2007) ("Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting.") (quotation marks omitted); *Gerard v. Ross*, 251 Cal. Rptr. 604, 613 (Cal. Ct. App. 1988) (noting the close relationship between concerted-action liability and aiding-and-abetting liability in the civil arena).

*Second*, although plaintiff does not challenge the well-established rule that words alone cannot amount to civil assault, he nonetheless maintains that "Facebook's failure to remove the [Third Intifada Page]" constitutes the overt action necessary to convert mere verbal threats into bodily assault. Pl's. Opp. at 10. That is clearly mistaken. Setting aside that plaintiff has not identified any concurrent action on the part of those third-party users who actually issued the threats, the more fundamental problem with plaintiff's argument is that it fails to recognize that not just any overt act results in liability for assault. Instead, the action accompanying a verbal threat must be "apparently intended to carry the threat into execution." *Restatement (Second) of Torts* § 31, cmt. a; *Marconi v. Officer One*, 2006 WL 2827862, at *8 (N.D. Cal. Oct. 3, 2006) (same). By any measure, Facebook's alleged delay in removing the Third Intifada Page could

not have been reasonably understood by plaintiff or anyone else as evidencing an intent by Facebook to carry out the threats found on that page.

*Third*, plaintiff argues that although the Third Intifada Page "stated that the attacks would commence on May 15, 2011"—at least six weeks after plaintiff viewed the threatening statements—"the general advocacy of violence towards Jewish people is sufficient to create more than reasonable apprehension and fear of immediate[] bodily injury." Pl's. Opp. at 11.  In so arguing, plaintiff mistakes a general fear of speculative future harm to a diffuse group of people around the world with the apprehension of "***imminent*** bodily contact" that is necessary for the tort of assault.  *Restatement (Second) of Torts* § 31, cmt. a (emphasis added).  As the Supreme Court of California has explained in the self-defense context, an imminent fear is one that "must be instantly dealt with" and must appear as "immediate and present and not prospective or even in the near future."  *In re Christian S.*, 7 Cal. 4th 768, 783 (Cal. 1994). Plaintiff's general fear that he might suffer unspecified harm at some point in the future simply is not sufficient.

### B.   Plaintiff's Negligence Claim Fails As A Matter Of Law

Plaintiff's arguments for why his negligence claim should survive Facebook's motion to dismiss are no more convincing.  As with his Amended Complaint, plaintiff's opposition brief offers nothing more than conclusory allegations of injury that are wholly insufficient to satisfy the actual-damages element of a negligence claim.  *See* Mot. to Dismiss at 15.  Plaintiff summarily states that he suffered "actual harm" because he was "faced with fear of violence and deadly attacks on himself as well as on others." Pl's. Opp. at 12.  To the extent plaintiff means to seek recovery for the speculative injuries he might suffer in the future, such a claim clearly fails as a matter of law.  *See* Mot. to Dismiss at 16.  Nor is there any plausible basis on which plaintiff could claim that viewing the Third Intifada Page caused him to suffer the kind of

11

"severe or extreme" emotional distress that is necessary to recover for emotional injury. Indeed, Facebook has already explained that plaintiff's emotional-injury allegations fail basic federal-pleading requirements. *See id*. at 19; *Iqbal*, 129 S.Ct. at 1949.

Plaintiff also errs by arguing that the Statement of Rights imposed on Facebook "a duty to take reasonable steps to mitigate harmful, violent and threatening messages." Pl's. Opp. at 12. Although the Statement of Rights expresses Facebook's desire to keep its website safe for its users, it also goes to great lengths to disclaim any legal duty to do so. The Statement of Rights thus states: "We do our best to keep Facebook safe, ***but we cannot guarantee it***." Mot. to Dismiss, Ex. 1, Allen Decl., Ex. A § 3 (emphasis added). Facebook also requires users to confirm that they will not "post content that[] is hateful, threatening … [or] incites violence." *Id*., Ex. A § 3.7. And if that were not enough, the Statement of Rights elsewhere reiterates, using all-capitals typeface, that Facebook is not assuming any legal duty to protect its users from third-party content. *See id*., Ex. A § 15.3 ("WE DO NOT GUARANTEE THAT FACEBOOK WILL BE SAFE OR SECURE."); *id.* Ex. A § 15.3 ("FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES.") (emphasis in original). As at least one court has already recognized, these provisions undermine any argument that the Statement of Rights imposed on Facebook any duty with respect to the content posted by Facebook users. *See Young v. Facebook, Inc.*, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010).

    **C.    Plaintiff's Claim For Intentional Infliction Of Emotional Distress Fails As A Matter Of Law**

In his opposition brief, plaintiff does not respond to any of Facebook's arguments for why his claim for intentional infliction of emotional distress fails as a matter of law. *See* Mot. to Dismiss 18-19. "It is well understood in this Circuit that when a plaintiff files an opposition to a

dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.).  This Court should thus treat Facebook's contentions as conceded and dismiss plaintiff's claim for intentional infliction of emotional distress.

## **CONCLUSION**

This litigation has dragged on for long enough.  Plaintiff commenced this frivolous action on March 31, 2011.  Since that time, he has sought numerous extensions of time, ignored Court-imposed deadlines, and filed an Amended Complaint that only added to the deficiencies in his original pleading.  As Facebook has now explained in three different filings—its first motion to dismiss, its revised motion to dismiss, and this reply brief—plaintiff's tort claims are both barred by § 230 of the CDA and lacking in legal merit in their own right.  In light of this history and the clear legal deficiency of plaintiff's allegations, Facebook requests that the Court dismiss plaintiff's Amended Complaint with prejudice.

Dated:  August 30, 2011                                           Respectfully submitted,

By:  /s/ *Craig S. Primis, P.C.*
Craig S. Primis, P.C. (D.C. Bar No. 454796)
K. Winn Allen (D.C. Bar No. 1000530)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
craig.primis@kirkland.com
winn.allen@kirkland.com

*Attorneys for Defendants*

13

**CERTIFICATE OF SERVICE**

I, Craig S. Primis, P.C., certify that on this date, August 30, 2011, I caused a true and correct copy of the Defendants' Reply Brief in Support of Motion to Dismiss to be served on the following individual via the Court's Electronic Case Filing system:

> Larry Klayman
> 2000 Pennsylvania Ave. N.W., #345
> Washington, DC 20006
> leklayman@yahoo.com

> /s/ *Craig S. Primis, P.C.*
> Craig S. Primis, P.C.