UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-874 (RBW) |
| | ) |
| MARK ZUCKERBERG, and | ) |
| FACEBOOK, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

The pro se plaintiff, Larry Klayman, brings this action against the defendants, Facebook, Inc. and its founder and CEO, Mark Zuckerberg, asserting claims of assault and negligence. See Complaint ("Compl.") ¶¶ 14-20. Currently before the Court are the Defendants' Motion to Dismiss ("Defs.' Mot.") and the Defendants' Motion to Transfer. Upon consideration of the parties' submissions,[1] the Court concludes, for the reasons stated below, that the defendants' motion to dismiss must be granted. Moreover, because the defendants sought transfer of this action "as alternative relief" to dismissal, Defs.' Transfer Mem. at 1, the Court denies as moot the defendants' motion to transfer without reaching the merits of that motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss ("Defs.' Mem."); (2) the Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"); (3) the Defendants' Reply Brief in Support of Motion to Dismiss ("Defs.' Reply"); (4) the Defendants' Memorandum of Points and Authorities in Support of Motion to Transfer ("Defs.' Transfer Mem."); (5) the plaintiff's Praecipe, attaching the Plaintiff's Opposition to Defendants' Motion to Transfer; and (6) the Defendants' Reply Brief in Support of Motion to Transfer.

## I.  BACKGROUND

The defendants operate www.facebook.com ("Facebook"), which is a "social networking" website.  Compl. ¶¶ 4, 7; Defs.' Mem. at 2.  As explained by the defendants, "Facebook allows users to share content with others, including articles, photographs, news about family members and friends, and opinions about world events.  Users can also view content shared by other Facebook users on one or more of the hundreds of millions of Facebook Pages."  Defs.' Mem. at 2 (citing Compl. ¶ 4).  "Viewership [of the website] is growing fast and exponentially" in many parts of the world, including the Middle East and the District of Columbia.  Compl. ¶¶ 4-5.  In order to use Facebook's services, "a user must open an account," which is provided without cost.  Defs.' Mem. at 2.

The plaintiff, an attorney who acts as the Chairman and General Counsel of an organization called Freedom Watch, Compl. ¶¶ 2, 11, maintains "a Facebook account, titled Larry Klayman," id. ¶ 6.  While using his Facebook account, the plaintiff "encountered the Facebook page titled 'Third Palestinian Intifada.'"  Id. ¶ 7.  The Third Palestinian Intifada Facebook page "called for an uprising beginning on May 15, 2011, after Muslim prayers [were] completed, announcing and threatening that 'Judgment Day will be brought upon us only once Muslims have killed all the Jews.'"  Id.  The Facebook page "had over 360,000 participants" and "three similar [Facebook] Intifada pages have come up with over 7,000 subscribers."  Id.  The Facebook page at issue, the Third Palestinian Intifada Facebook page, caught the attention of the Public Diplomacy Minister of Israel, who wrote a letter to the defendants requesting that they "take down the page and similar and related pages."  Id.  The defendants initially "refused for many days" to remove the page, but eventually removed it "begrudgingly."  Id. ¶ 12.

The plaintiff originally filed this action in the Superior Court of the District of Columbia on March 31, 2011.  Notice of Removal ¶ 1.  The defendants successfully removed the case to this Court in May 2011.  See generally Notice of Removal.  The plaintiff asserts claims of negligence and assault against the defendants, and seeks permanent injunctive relief preventing the defendants from allowing Facebook users to publish the Third Palestinian Intifada Facebook page and other similar pages, compensatory and punitive damages amounting to over $1,000,000,000.00, as well as attorneys' fees and costs.  Compl. ¶ 20.  The defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mot at 1.

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has properly stated a claim upon which relief may be granted.  Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000).  For a complaint to survive a Rule 12(b)(6) motion, Federal Rule of Civil Procedure 8(a) requires that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a) does not require "detailed factual allegations," a plaintiff is required to provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57 (2007)), in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted and alteration in original).  In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is

3

liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A complaint alleging facts which are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a Rule 12(b)(6) motion under this framework, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice," EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted). While the Court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. If "the [C]ourt finds that the plaintiff[] [has] failed to allege all the material elements of [his] cause of action," then the Court may dismiss the complaint without prejudice, Taylor v. FDIC, 132 F.3d 753, 761 (D.C. Cir. 1997), or with prejudice, provided that the Court "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted). Although courts ordinarily afford special consideration to pro se pleadings in the motion to dismiss context, the plaintiff here is an attorney, Compl. ¶¶ 2, 11, and is thus "presumed to have a knowledge of the legal system and

need less protections from the [C]ourt." Richards v. Duke Univ., 480 F. Supp. 2d 222, 234 (D.D.C. 2007); see also Holtz v. Rockefeller & Co., 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[A] lawyer] . . . cannot claim the special consideration which the courts customarily grant to pro se parties.") (internal citation omitted).

### III. LEGAL ANALYSIS

The defendants argue that the Communications Decency Act of 1996 (the "CDA"), 47 U.S.C. § 230 (2006), requires that the plaintiff's complaint be dismissed in its entirety. Defs.' Mem. at 1-2. The plaintiff responds that the CDA does not bar his claims,[2] Pl.'s Opp'n at 3-9, and that, in any event, "raising the affirmative defense of § 230 [in] a motion to dismiss is improper and thus, should be denied," id. at 9.

The CDA, which has not been extensively construed within this Circuit, provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Act, in turn, defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). An "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C.

---

[2] Among other arguments, the plaintiff devotes a portion of his opposition to discussing the public policy and legislative intent underlying the CDA. Pl.'s Opp'n at 3-5. The Court declines the plaintiff's invitation to elevate policy considerations above the plain meaning of the statute, and instead "must give effect to the plain meaning of the words Congress has chosen." News Am. Publ'g, Inc. v. FCC, 844 F.2d 800, 806 (D.C. Cir. 1988).

§ 230(f)(3). By its plain terms, then, the CDA immunizes internet computer service providers from liability for the publication of information or speech originating from third parties. 47 U.S.C. § 230(c)(1); see also Blumenthal v. Drudge, 992 F. Supp. 44, 49 (D.D.C. 1998) ("Congress . . . in enacting the [CDA] . . . made the legislative judgment to effectively immunize providers of interactive computer services from civil liability in tort with respect to material disseminated by them but created by others.").

The Court must therefore grant the defendants' motion to dismiss if it answers three questions in the affirmative: (1) whether the defendants are "provider[s] . . . of an interactive computer service," 47 U.S.C. § 230(c)(1); (2) whether the plaintiff seeks to treat the defendants as "publisher[s] or speaker[s] of any information provided," id.; and (3) whether the information at issue was published "by another information content provider," id. See Parisi v. Sinclair, 774 F. Supp. 2d 310, 315-16 (D.D.C. 2011) (citing Nemet Chevrolet, Ltd., v. Consumeraffairs.com, Inc., 564 F. Supp. 2d 544, 548 (E.D. Va. 2008), aff'd, 591 F.3d 250 (4th Cir. 2009)). Contrary to the plaintiff's arguments, Pl.'s Opp'n at 9, the Court may grant a motion to dismiss on CDA grounds, Nemet Chevrolet, Ltd., 591 F.3d at 260.

**A. Are the defendants providers of an interactive computer service?**

"Courts generally conclude that a website falls within" the definition of an interactive computer service. Ascentive, LLC v. Opinion Corp., 842 F. Supp. 2d 450, 473 (E.D.N.Y. 2011) (collecting cases from the First, Fourth, and Ninth Circuits). At least one court has treated defendants who provided services similar to those at issue in this case as interactive computer service providers. See, e.g., Doe v. MySpace, Inc., 528 F.3d 413, 415, 418-19, 422 (5th Cir. 2008) (affirming district court's dismissal of tort claims against defendant who provided an

interactive computer service by creating and maintaining an "[o]nline social networking" website). And other courts have specifically found that "Facebook meets the definition of an interactive computer service under the CDA." Fraley v. Facebook, Inc., 830 F. Supp. 2d 785, 801-802 (N.D. Cal. 2011); see also Young v. Facebook, Inc., No. 5:10-cv-03579, 2010 WL 4269304 at *5 (N.D. Cal. Oct. 25, 2010).

As the defendants explain, Defs.' Mem at 2, and as the plaintiff describes in his complaint, Compl. ¶¶ 4, 7, 12, the defendants maintain a website that gives its users the ability to create, upload, and share various types of information, potentially with hundreds of millions of other users. In other words, the defendants "provide[] or enable[] computer access by multiple users to a computer server," 47 U.S.C. § 230(f)(1), and the Court finds that they are therefore interactive computer service providers.

### B. Does the plaintiff seek to hold the defendants liable as publishers or speakers of information published by another information content provider?

As another court has observed, when examining a plaintiff's claims through the lens of the CDA, courts must ask whether the alleged conduct "derives from the defendant's status or conduct as a publisher or speaker. If it does, [§] 230(c)(1) precludes liability." Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1102 (9th Cir. 2009) (internal quotation marks omitted); see also Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions . . . are barred."). Although this Circuit has not examined the definition of the word "publisher" within the meaning of the CDA, other courts have construed the term as referring to one who "review[s], edit[s], and decid[es] whether to publish or to withdraw from publication third-party content." Barnes, 570 F.3d at 1102 (citing Fair Hous. Council of San Fernando Valley v.

Roommates.com, LLC, 521 F.3d 1157, 1170-71 (9th Cir. 2008) and Webster's Third New International Dictionary 1837 (Philip Babcock Gove ed., 1986)) (emphasis added); see also Green v. Am. Online, 318 F.3d 465, 471 (3d Cir. 2003) (describing decisions "whether to publish, withdraw, postpone, or alter content" as falling within "a publisher's traditional editorial functions" (quoting Zeran, 129 F.3d at 330) (internal quotation marks omitted)).

The plaintiff in this case asserts two state law causes of action: assault and negligence. Given that the action was filed in the District of Columbia, the law of the District might govern the plaintiff's claims. However, the defendants argue that California state law should control the plaintiff's claims, Defs.' Mem. at 11, and the plaintiff does not dispute the defendants' position, see generally Pl.'s Opp'n. The choice of law is of no moment, however, because the elements of each cause of action are identical under both California state law and the law of the District of Columbia. Assault is defined as "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim." Etheredge v. Dist. of Columbia, 635 A.2d 908, 916 (D.C. 1993); see also Thing v. La Chusa, 48 Cal.3d 644, 649 (Cal. 1989) ("'A civil action for assault is based upon an invasion of the right of a person to live without being put in fear of physical harm.'" (citation omitted)). And in order to prevail on a claim of negligence, the plaintiff "must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789, 793 (D.C. 2011); see also Juarez v. Boy Scouts of Am., Inc., 81 Cal. App. 4th 377, 401 (Cal. Ct. App. 2000) (citing Nally v. Grace Cmty. Church, 47 Cal.3d 278, 292-93 (Cal. 1988)).

As to the assault claim, the plaintiff alleges that the defendants "marketed, used, and allowed [Facebook] to be used" to "intentionally, violently and without just cause" assault the plaintiff. Compl. ¶ 17. As to the negligence claim, the plaintiff alleges that the defendants "owed [him] a duty of care, which they violated and breached by allowing and furthering the death threats by the Third Palestinian Intifada, and . . . refus[ing] . . . to remove these postings." Id. ¶ 19. Accordingly, and with respect to both claims, the defendants' alleged conduct ascribed to them the status of publishers of information, whether by "using" the website to post certain content (i.e., publishing), id. ¶ 17, "allow[ing]" certain content to be posted to the website (i.e., deciding whether to publish), id. ¶¶ 17, 19, or by "refus[ing] . . . to remove these postings," id. ¶ 19. The defendants' potential liability is thus "derive[d] from [their] status or conduct as a publisher or speaker." Barnes, 570 F.3d at 1102.

The plaintiff argues, however, that the defendants' alleged conduct does not arise from the defendants' status as publishers, but rather from their violation of "contractual, quasi-contractual and fiduciary obligations" and that the defendants are thus not entitled to immunity under the CDA. Pl.'s Opp'n at 5 (citing Barnes, 570 F.3d at 1107). Leaving aside the question of whether the plaintiff's argument is legally sound, the Court notes that, unlike in Barnes, upon which the plaintiff relies, Pl.'s Opp'n at 5, the complaint here is devoid of any references to any contractual cause of action. See Barnes, 570 F.3d at 1099 ("Barnes . . . refers in her complaint and in her briefs to Yahoo's 'promise' to remove the indecent profiles and her reliance thereon to her detriment. We construe such references to allege a [breach of contract] cause of action." (emphasis added)). Instead, the plaintiff raises the possibility of contractual liability for the first time in his opposition to the defendants' motion to dismiss. Pl.'s Opp'n at 5-6. It begs credulity

9

that the plaintiff, a "highly visible and well known lawyer," Compl. ¶ 11, would not have included a claim for breach of contract if he contemplated such a claim as a viable possibility. In light of the plaintiff's failure to assert a breach of contract claim or to plead facts consistent with such a claim, as well as his failure to amend his complaint when given the opportunity to do so, September 16, 2011 Order at 1-2 (ECF # 30); March 23, 2012 Order at 1-2 (ECF # 34), the Court declines to entertain the plaintiff's attempt to essentially re-fashion his complaint to now include a claim for breach of contract, Larson v. Northrop Corp., 21 F.3d 1164, 1173-74 (D.C. Cir. 1994) (affirming district court's grant of summary judgment in favor of defendant where plaintiff "failed to plead" a new cause of action, "raised the issue for the first time in his opposition to . . . [the defendant's] motion," and had not adequately pleaded the new cause of action in his complaint).

### C. Were the defendants acting as information content providers?

The plaintiff seems to acknowledge that "another information content provider," 47 U.S.C. § 230(c)(1) (emphasis added), created the information, Compl. ¶¶ 17, 19. He argues, however, that the defendants are subject to liability under the CDA because they are, themselves, information content providers. Pl.'s Opp'n at 6-8. The defendants reply that they cannot be categorized as information content providers because they "were not responsible for the 'creation or development' of the offending content." Defs.' Reply at 8 (quoting 47 U.S.C. § 230(f)(3)).

While the defendants might well be information content providers as to some information on their website, other courts have framed the relevant question to be whether a defendant "function[s] as an 'information content provider' for the portion of the statement or publication at issue." Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1123 (9th Cir. 2003); see also

Roskowski v. Corvallis Police Officers' Ass'n, 250 Fed. App'x 816, 816-17 (9th Cir. 2007) ("To the extent that [the plaintiff] . . . has not shown that [the defendant] made those postings itself, [the plaintiff] cannot hold [the defendant] liable for the content of the postings."); Nemet Chevrolet, Ltd., 591 F.3d at 260 (affirming district court's dismissal of complaint where plaintiff failed to show that defendant "was responsible for the creation or development of the allegedly defamatory content at issue" (emphasis added)).  And another member of this Court has stated that "[§] 230(c)(1) would not immunize [the defendant] with respect to any information [the defendant] developed or created entirely by itself and [] there are situations in which there may be two or more information content providers responsible for material disseminated on the Internet."  Blumenthal, 992 F. Supp. at 50.  Restricting a defendant's liability as an information content provider to information actually created or developed by the defendant, in whole or at least in part, is in keeping with the stated policy of the CDA "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation," 47 U.S.C. § 230(b)(2).  The Court will therefore follow the approach of the Ninth Circuit, Fourth Circuit and the Blumenthal Court.

The plaintiff argues only that the "[d]efendants encouraged [the Third Palestinian Intifada Facebook page] . . . by failing to remove" the page "in a timely manner."  Pl.'s Opp'n at 8; see also Compl. ¶ 7 (alleging that the defendants "refused" to remove the page).  Nowhere in his complaint or in his opposition brief does the plaintiff allege that the defendants contributed to the content of the Facebook page at issue.  Rather, as described above, the plaintiff focuses on the role that the defendants played in publishing the Facebook page.[3]  The plaintiff's own allegations

---

[3] The plaintiff asserts in his opposition that the defendants are nonetheless information content providers because they collect data from Facebook users and then use that data "to make suggestions" to users about content in which (Continued . . . )

are inconsistent with a finding that the defendants acted as information content providers with respect to the offensive material at issue. The Court thus finds that the defendants are not information content providers within the meaning of the CDA.

## IV. CONCLUSION

Because (1) the defendants provide an interactive computer service, (2) the plaintiff's complaint attempts to hold the defendants liable as publishers or speakers of a third party's information, and (3) the defendants are not, themselves, information content providers with respect to the information at issue, the defendants are immune to suit in accordance with the CDA, and the Court must grant the defendants' motion to dismiss.[4]

**SO ORDERED** this 28th day of December, 2012.

REGGIE B. WALTON
United States District Judge

---

( . . . continued)
the users might be interested. Pl.'s Opp'n at 7-8. Even if this is the case, such actions do not constitute the creation or development of information. Indeed, courts have held in other cases that the manipulation of information provided by third parties does not automatically convert interactive computer services providers into information content providers. Blumenthal, 992 F. Supp. at 51-52 (interactive computer service provider that "exercis[ed] editorial control" over content on its website was not an information content provider); Ben Ezra, Weinstein, & Co., v. Am. Online, Inc., 206 F.3d 980, 985-86 (10th Cir. 2000) (internet computer service provider that edited and altered stock quotation information at the request of third parties was not an information content provider); Carafano, 339 F.3d at 1123-24 (interactive computer service provider's categorization of postings on website "does not transform [it] into" an information content provider).

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.